1
2
3
4
5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF CALIFORNIA

7

8   ANGELA D. MAYFIELD,                    CASE NO. CV F 13-1619 LJO BAM

9              Plaintiff,          **FINDINGS AND RECOMMENDATIONS ON**
                                   **DEFENDANTS LAW OFFICES OF MORSE AND**
10                                 **PFEIFF, CINDY MORSE, AND THOMAS**
                                   **PFEIFF'S F.R.Civ.P. 12 MOTION TO DISMISS**
11

12         vs.

13  COUNTY OF MERCED, et al.,

14             Defendants.
   _____/
15
                                   **INTRODUCTION**
16
         Defendants Cindy Morse ("Ms. Morse"), Thomas Pfeiff ("Mr. Pfeiff") (collectively "lawyer
17
    defendants") and the Law Office of Morse & Pfeiff, dba Merced Defense Associates ("MDA")
18
    (collectively "Defendants") seek to dismiss *pro se* Plaintiff Angela D. Mayfield's ("Plaintiff" or
19
    "Ms. Mayfield") complaint as legally barred and insufficiently pled.[1]   The motion was referred to
20
    this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local  Rule 302.  The Court deemed the matter
21
    suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing
22
    scheduled for March 28, 2014.  For the reasons discussed below, Defendants' Motion to Dismiss
23
    should be DENIED in part and GRANTED in part.
24

25

26

27   _____

28   [1]     In addition to Ms. Morse, Mr. Pfeiff, and MDA, Ms. Mayfield's operative Complaint for Damages
     ("Complaint") names the County of Merced ("County") as a defendant.  The County filed its own motion to dismiss
     which the Court addresses by separate order.

                                           1

# BACKGROUND

## Summary

Plaintiff's action arises from her work as an attorney with the Law Offices of Morse and Pfeiff, doing business as Merced Defense Associates ("MDA").  Ms. Mayfield was hired as an attorney by MDA to perform juvenile criminal defense work under MDA's contract with the County of Merced to provide public defender services.  MDA serves as the County's primary contractor to represent indigent criminal defendants when conflicts of interest arise with the County's Public Defender. Ms. Mayfield, Ms. Morse, and Mr. Pfeiff are California-licensed attorneys who provided such criminal defense representation.  Ms. Morse and Mr. Pfeiff are co-owners and principals of MDA, a general partnership.  In September 2012, MDA terminated its relationship with Ms. Mayfield, an African-American. Plaintiff's complaint alleges numerous claims based on race and gender discrimination, retaliation, and related claims arising out of her relationship with MDA and her termination.

## The Instant Action

Ms. Mayfield initiated this action on October 8, 2013.  (Doc. 1).  As relevant to the current motion, Plaintiff asserts ten claims against MDA, Ms. Morse, and Mr. Pfeiff: (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*; (2) race and sex discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940, *et seq*; (3) retaliation in violation of Title VII; (4) retaliation in violation of FEHA; (5) violation of the Equal Pay Act of 1963  ("EPA"), 29 U.S.C. § 206, *et seq*.;  (6) violation of California Equal Pay Act, Cal. Labor Code § 1197.5 ("CEPA"); (7) violation of the Civil Rights Act of 1866 (42 U.S.C. §1981, *et seq*.); (8) intentional infliction of emotional distress; (9) wrongful termination in violation of public policy; and (10) breach of the implied covenant of good faith and fair dealing.

## Independent Contractor Agreement

### A.    MDA's Contract For Indigent Defense Services With The County

In May 2003, MDA and the County entered into a Contract for Indigent Defense Services ("County-MDA contract") by which MDA agreed to provide indigent criminal defense services in

2

matters where a conflict of interest with the County Public Defender arises.  Plaintiff's Complaint Ex. E, Doc. 2 ("County-MDA Contract").    The County-MDA contract, attached to the complaint and incorporated herein by reference, provides that MDA is "an independent contractor in the performance of the work and obligations" under the MDA-County contract.[2]  The MDA-County contract, further provides that:

1.    The County lacks "control or direction over the methods by which ATTORNEY [MDA] shall perform the ATTORNEY's its [sic] professional work and functions";

2.    "[N]o employer-employee relationship is created and ATTORNEY shall hold COUNTY harmless and be solely responsible for withholding, reporting and payment of any federal, state or local taxes, contributions or premiums imposed or required by workers' compensation, unemployment insurance, social security, income tax, other statutes or codes applying to ATTORNEY, or its sub-contractors and employees";

3.    MDA "shall maintain under contract a sufficient number of attorneys . . . to provide adequate legal defense services to indigent defendants";

4.    MDA is required to have "all personnel required provide the services" under the MDA-County contract;

5.    MDA's "personnel expressly agreed that they are not employees of the COUNTY";

6.    MDA is required to maintain liability, automobile, workers' compensation and professional liability insurance; and

7.    MDA "agrees to hold harmless, defend, and indemnify COUNTY, its officers, agents, and employees from any and all claims and losses occurring or resulting from the acts and omissions of ATTORNEY, ATTORNEY's agents, or employees . . ."

**B.    Ms. Mayfield's Contract For Indigent Defense Services With MDA**

In the most recent version of their contract, Ms. Mayfield and MDA entered into a June 27, 2012 Contract for Indigent Defense Services ("Mayfield-MDA contract") which provides:

1.    "ATTORNEY [Ms. Mayfield] is an independent contractor and is not an employee,

---

[2]    Plaintiff's claim relies on the contents of two separate contracts; the incorporation by reference doctrine permits a party to attach a document to her motion to dismiss, so long as the parties do not dispute the authenticity of the document.

agent or principal of MERCED DEFENSE ASSOCIATES, nor of any other attorney with whom MERCED DEFENSE ASSOCIATES enters into an agreement to provide indigent legal services. The ATTORNEY is and shall at all times be deemed independent and shall be wholly responsible for the manner in which he/she performs the services required by the terms of this agreement";

2.     "[N]o employer/employee relationship is created and ATTORNEY shall hold MERCED DEFENSE ASSOCIATES harmless and be solely responsible for withholding, reporting and payment of any federal, state and local taxes, contributions or premiums imposed or required by Workers Compensation, unemployment insurance, social security, income tax, other statutes or codes applying to ATTORNEY, or its agents and employees, if any.  The ATTORNEY, his agents and employees shall not be considered in any manner to be employees of MERCED DEFENSE ASSOCIATES."

### Factual History

Plaintiff began work for MDA in February 2005. Plaintiff's Complaint ("Compl.") ¶ 10, Doc. 1.  Plaintiff's complaint alleges that she became dissatisfied with her caseload and the compensation she received from MDA and made multiple complaints to MDA regarding those issues.   Compl. ¶ 8. During her tenure with MDA, Plaintiff discovered that her Caucasian male coworkers received higher overall compensation and higher starting pay than she was offered.   Compl. ¶ 26. Plaintiff also alleges that on September 7, 2012, while she and Mr. Pfeiff were both in court, Plaintiff told a judge that she could not accept an additional case because her caseload was too large and that she was addressing the issues with MDA.  Compl. ¶ 12.

On September 10, 2012, MDA notified Plaintiff that it was terminating her contract "without cause." Compl. ¶ 13.  After receiving notice of the termination, Plaintiff met with County executive officer Angelo Lamas to discuss her termination.  Compl. ¶ 13. During their discussion, Mr. Lamas advised Plaintiff regarding the rate the County paid for indigent defense attorneys. Compl. ¶ 13. After meeting with Mr. Lamas, Plaintiff alleges that she realized that the County provided enough funding to pay her additional compensation as well as hire additional attorneys to share her caseload. Compl. ¶ 39.

Plaintiff filed a charge of discrimination under the California Fair Employment and Housing

4

Act ("FEHA") and she received a right-to-sue letter on April 30, 2013. Compl. ¶ 31; Exh. D. She filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on September 4, 2013. Compl. ¶ 3, Exh. C. Plaintiff alleges that Defendants discriminated against her based on her race and sex by failing to assign her a case load comparable to that of her white colleagues.  Further, Plaintiff alleges that she performed the same job duties as her white male coworkers, yet she was paid a lower wage for such work based on her race and sex.  Compl. ¶ 34.

On January 8, 2014, Defendants filed the now pending motion to dismiss.  (Doc. 13).  In response, Plaintiff filed an opposition on March 14, 2014, and Defendant filed a reply on March 24, 2014.  The Court deemed this matter suitable for decision without oral argument and vacated the scheduled hearing pursuant to Local Rule 230(g).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A complaint] must contain sufficient allegations of underlying facts to give fair notice . . . [to] the opposing party . . . [and] must plausibly suggest an entitlement to relief").

5

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Although review under Rule 12(b)(6) is generally limited to the contents of the complaint, the Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court required to accept as true allegations that are conclusory or the product of unwarranted deductions of fact. *Id.* Finally, if the court concludes that dismissal is warranted under Rule 12(b)(6), the dismissal should be with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

**A.     Classification as an Independent Contractor vs. Employee**

Plaintiff brings six claims for which she must demonstrate that she was Defendants' "employee" and not an independent contractor. Claims four through eight are all brought under Title VII or FEHA, "which predicates potential . . . liability on the status of the defendant as an 'employer.'" *Kelly v. Methodist Hosp. of S. Cal*., 22 Cal. 4th 1108, 1116 (2000) (*quoting* Cal. Gov't Code § 12926).[3] Claim nine, violation of the Equal Pay Act ("EPA") under the Fair Labor Standards Act ("FLSA"), and claim ten, violation for unequal pay under the California Labor Code ("CEPA"), may only be brought against an employer. *Northwest Airlines v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 92 (1981) (the Equal Pay Act is "expressly directed against employers;

---

[3]      The Court notes that while Plaintiff's claims are brought under Title VII *and* FEHA. Claims under FEHA are often analogous to claims under Title VII and generally are analyzed similarly. *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 922-23 (9th Cir. 2000); *see also Clark v. Claremont University Center*, 6 Cal. App. 4th 639, 662 (1992) ("Although [FEHA and Title VII] differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of [FEHA].") (internal quotation marks and citation omitted).

6

Congress intended in these statutes to regulate their conduct for the benefit of employees"; Cal. Lab. Code § 2750.5 (addressing whether a worker is an employee).  Thus, to prevail on her employment discrimination and retaliation claims under Title VII, FEHA, the EPA, and CEPA, Ms. Mayfield must allege a factually sufficient, plausible claim that she was an "employee" of MDA. Further, Plaintiff must establish that Mr. Pfeiff and Ms. Morse are liable in their individual capacities.

1.   **Failure to State a Title VII Claim (Claims Four and Seven)**

MDA and the lawyer defendants both argue that Plaintiff cannot sustain her fourth and seventh claims brought pursuant to Title VII for race and sex discrimination and retaliation. MDA argues that it does not meet the Title VII definition of employer because, by Plaintiff's allegations, it employs only three people.   Additionally, the lawyer defendants argue that they are immune to individual liability under Title VII.

MDA claims that Title VII is inapplicable as MDA does not have the requisite fifteen employees necessary to be considered 'employers' under the statute. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person ..." 42 U.S.C. § 2000e(b).  Plaintiff argues that MDA is subject to a Title VII claim because it serves as an agent for the County of Fresno, which employs over fifteen people. (Doc. 19 at 8).  *See Childs v. Local 18, Intern. Broth. Of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983).

In *Childs*, the Ninth Circuit agreed that an employer with fewer than 15 employees is an employer as defined by Title VII, if it is an agent of another employer with 15 or more employees. *Id.* at 1382.  An agency relationship exists when two parties agree that one party (agent) shall act for or on the other's behalf (principal), subject to the principal's control, and the agent's acts are those of the principal. *Nelson v. O.E. Serwold*, 687 F.2d 278, 282 (9th Cir. 1982). The Ninth Circuit in *Childs* applied traditional indicia of an agency relationship to determine if one employer was the agent of a larger employer pursuant to Title VII. *Childs*, 719 F.2d. at 1382-1383. The nature and extent of actual control over the agent by the principal is the main factor to consider in determining the existence of an agency relationship for Title VII purposes. *Laughon v. International Alliance of Theatrical Stage*

*Employees*, 248 F.3d. 931, 935 (9th Cir. 2001). In analyzing the relationship, the Ninth Circuit evaluated the smaller employer's ability to hire and fire its own employees, maintain its own accounts and independently conduct its daily business as determinative factors. *Id.*

Plaintiff's complaint alleges that MDA maintained control over MDA's business decisions. In fact, the separation between the County's operation and MDA's day-to-day activities is fundamental. As a part of the County-MDA contract, cases are assigned to MDA when the County-controlled public defender's office is barred from representing clients due to a conflict of interest. Compl. ¶ 9; County-MDA Contract; (Doc. 2 at 13). The County uses MDA's services to maintain a conflict-free arrangement in representing indigent defendants in certain cases.  County-MDA Contract ¶ 18 ("Contract Attorneys shall maintain offices separate from the Public Defender and from such other attorneys that [MDA] engages to act as a Contract Attorney.)  The use of the separate offices is to avoid conflicts of interest and an ethical "glass wall," as that term is recognized in *Castro v. Los Angeles County Board of Supervisors* (1991) 232 Cal.App.3d 1432).").  The County-MDA contract allows MDA to hire and fire whomever it chooses without the County's influence. Additionally, MDA does not require approval from the County to terminate the employment of one of its employees.

At the time Plaintiff was hired, MDA made the decision to hire her, which cases she would take, and how much she would be compensated for her work.  Compl. ¶ 16.  Further, it was solely MDA's decision to fire her.  Compl. ¶ 38.  Beyond alleging a financial relationship, Plaintiff has not shown or alleged that the County controlled MDA's employment decisions or that the County otherwise controlled MDA's daily operations. Based upon the information in the record and viewed in the light most favorably to the Plaintiff, Plaintiff has not alleged that MDA acted as the County's agent pursuant Title VII.  Instead, as seen in the County-MDA Contract and plaintiff's allegations, MDA is an independent contractor, not an agent. Independent contractors are not counted as employees for purposes of federal anti-discrimination statutes like Title VII. *Adcock v. Chrysler Corp.,* 166 F.3d 1290, 1292 (9th Cir. 1999).  Therefore, the County's employees are not counted to reach the statutory minimum of fifteen employees.  Plaintiff does not argue that she can add factual allegations to show a plausible claim that the County and MDA are involved in an agency

8

relationship.  Therefore, leave to amend this claim should be denied.

Plaintiff alleges in her complaint that MDA employed three employees on its payroll and employed six contract attorneys operating under contracts identical to her own.  As Plaintiff has not shown that MDA employed 15 employees during the relevant time period, Title VII is inapplicable to MDA and Plaintiff cannot state a claim against MDA under such provision. Likewise, the lawyer defendants cannot be held liable under Title VII in their individual capacity because individuals do not qualify as "employers" and may not be liable under Title VII.  *See Holly D. v. California Inst. of Tech.,* 339 F.3d 1158, 1179 (9th Cir. 2003)*; see also Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587-88 (9th Cir. 1993) (no individual liability under Title VII).   The Court will, therefore, recommend the dismissal of Plaintiff's Title VII claims without leave to amend.

## 2.    Remaining Discrimination Claims (Claims Five, Eight, Nine and Ten)

Defendants move to dismiss Plaintiff's remaining claims under FEHA, the EPA, and the California Labor Code because Plaintiff is not entitled to relief as an employee.  Defendants argue that Plaintiff has not sufficiently alleged that Defendants controlled the manner and means of her employment as required under California law for several reasons.  First, Defendants point to the Mayfield-MDA contract which explicitly designates Plaintiff as an independent contractor and not an employee.  Second, Defendants argue that there are no allegations that Plaintiff was given distinct assignments or isolated tasks or that anyone at MDA was supervising or reviewing her work.  Finally, Defendants argue that the allegations do not support employee status based on the other common law factors including: (1) Plaintiff did not share in the profit or loss of the firm; (2) Plaintiff does not state allegations regarding the materials or equipment required other than that she was provided office space and investigative services; (3) Plaintiff's service, as an attorney, required significant skill; and (4) the working relationship as provided by the contract, established a less than one year term, which was presumably renewed; and (5) Plaintiff does not allege that her services were an integral part of the business.

Under California law, that the parties placed the "independent contractor" label on their relationship "is not dispositive and will be ignored if their actual conduct establishes a different relationship." *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1 (Cal. Ct. App. 2007)

(citing *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341 (Cal. 1989)). Instead, "the most important factor [informing the employee/independent contractor distinction] is the right to control the manner and means of accomplishing the result desired." *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 77 (Cal. Ct. App. 2009)); *accord Estrada*, 64 Cal. Rptr. 3d at 335 ("The essence of the [common law] test [of employment] is the 'control of details'—that is, whether the principal has the right to control the manner and means by which the worker accomplishes the work . . . ."). In addition, "California courts consider a number of additional factors, including: the right of the principal to discharge at will, without cause . . . whether the work is usually done under the direction of the principal . . . and whether the parties believe they are creating an employer-employee relationship." *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 581 (N.D. Cal. 2011).

Plaintiff's complaint alleges that MDA maintained significant control over her work. As alleged in her complaint, MDA hired her and retained the right to terminate her. Further, MDA selected her caseload and she was prevented from choosing her own clients. MDA chose Plaintiff's clients and required her to represent them or risk losing her job. MDA provided office space for its contract attorneys, office access, and paid for investigative and discovery related expenses. Compl. ¶ 13.

In assessing MDA's motion to dismiss for failure to state a claim, courts "accept all well-pleaded allegations in the complaint as true and … draw all reasonable inferences in favor of the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031-32 (9th Cir. 2008). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).

At this stage of the litigation, it is premature for this Court to conclude that Plaintiff was not MDA's employee under her remaining state and federal discrimination claims. Looking to the facts alleged in Plaintiff's complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff has alleged enough facts to state a claim that is plausible on its face. Plaintiff states in her complaint

that MDA exercised control over the way Plaintiff's services were to be performed.  Compl.  ¶ 12.  MDA hired Plaintiff after she responded to an ad in the local paper.  MDA subsequently terminated Plaintiff after an almost eight year relationship. Prior to her termination, MDA paid Plaintiff's monthly salary and assigned her specific and distinct cases. For example, a significant grievance detailed in Plaintiff's complaint alleges that she was overburdened by the juvenile caseload.  She argues in her complaint that over her objections, she was essentially assigned every new juvenile case sent to MDA.  Compl.  ¶ 31.  Plaintiff was unable to refuse cases and she was constructively precluded from taking outside cases due to her overwhelming MDA caseload—a sufficient allegation that these services were critical to MDA's business. Plaintiff further alleges that MDA determined Plaintiff's compensation unilaterally, chose her clients, and provided the instrumentalities of her work. Further, although Plaintiff signed one-year contracts, she alleges they were created solely for the purpose of creating the appearance of a short-term relationship, evidenced by her almost eight-year employment with MDA. (Doc. 19 at 11.)

Courts must consider the underlying facts of a working relationship, beyond a contractual agreement, to determine whether a person is an employee or an independent contractor and under these circumstances, a fact-finder would be required to determine the relationship between Ms. Mayfield and MDA. *See Leramo v. Premier Anesthesia Med. Group*, 2011 U.S. Dist. LEXIS 73645, *29 (E.D. Cal. July 8, 2011) (denying summary adjudication on the question of whether Plaintiff was an employee even though Plaintiff signed an independent contractor agreement when fact issues remained as to whether Plaintiff was engaged in an employer-employee relationship). Accordingly, dismissal should be denied as to the remaining federal and state law discrimination claims because Plaintiff has alleged an employment relationship under the circumstances and facts presented. Taking Plaintiff's factual allegations in the light most favorable to the Plaintiff, she has alleged sufficient facts to establish a possible employer-employee relationship.  Accordingly, MDA's motion to dismiss Plaintiff's fifth, eighth, ninth and tenth claims should be DENIED.

The same cannot be said however about the individual liability faced by the lawyer defendants.  Although an employer may be held liable for discrimination under FEHA and the

11

California Equal Pay Act, non-employer individuals are not personally liable for that discrimination. *See Reno v. Baird*, 18 Cal. 4th 640, 643 (1998); *Jones v. Gregory*, 137 Cal.App.4th 798, 804 (2006) ("Under the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages.").  Thus, the lawyer defendants' motion to dismiss Plaintiff's fifth, eight, ninth and tenth claims against Defendants Morse and Pfeiff should be GRANTED without leave to amend.

**B.    Deprivation of Civil Rights Under 42 U.S.C. § 1981 (Claim 12)**

Plaintiff alleges in her twelfth claim that Defendants violated her rights under 42 U.S.C. § 1981.  Specifically, Plaintiff alleges that Defendants terminated her based on her race.  Compl.  ¶ 84. MDA argues that under the "no-cause" provision of the Mayfield-MDA contract, MDA had the right to terminate Plaintiff—race and gender was not a factor.  Further, the individual defendants argue that there are no direct allegations that Mr. Pfeiff or Ms. Morse made the decision to terminate Plaintiff's contract based on race or gender.

In pertinent part, 42 U.S.C. § 1981 (a) provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property. . . ." The statute defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Plaintiff's claim under § 1981 is governed by the burden-shifting principles set forth by the Supreme Court:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "To establish a right to relief under § 1981, a plaintiff

12

must show (1) that she belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Crawford v. Kern County County Sch. Dist. Bd. of Trs.,* 2010 U.S. Dist. LEXIS 48296, *27-28 (E.D. Cal. 2010) (*citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993))

In support of its motion, MDA argues that it had the right to exercise the "without cause" termination provision of Plaintiff's independent contractor agreement and that Plaintiff's race and gender were not a factor in the decision to terminate her.  (Doc. 13 at 20).

Contrary to MDA's assertions, Plaintiff alleges that "during the course of her contract services for MDA, she experienced racial discrimination."  (Doc. 19 at 14).  Plaintiff discovered that she and another African-American female attorney received significantly less compensation than similarly situated Caucasian males even though her male co-workers handled far fewer cases. Plaintiff also alleges that she was denied benefits given to members outside of her class.  Plaintiff's allegations of discriminatory pay and discriminatory treatment coupled with her termination sufficiently plead a violation of § 1981 against MDA.

Plaintiff's similar factual allegations against individual defendant, Mr. Pfeiff, are also sufficient to state a claim against Mr. Pfeiff.  A supervisory official may be liable for race discrimination under § 1981 only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir.1991)), *cert. denied*, 502 U.S. 1074 (1992); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989) (same). Supervisors can be held liable for (a) their own culpable action or inaction in the training, supervision, or control of subordinates; (b) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others. *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Plaintiff's complaint alleges that Mr. Pfeiff, through MDA, abridged Plaintiff's civil rights. Plaintiff alleges that she repeatedly complained to Mr. Pfeiff that her caseload was too large for one attorney and that her compensation was too low.  Compl.  ¶ 23.  Mr. Pfeiff told Plaintiff that the

County's budget did not allow for additional compensation and that "they would look into her caseload." Compl. ¶ 23. On the same day that Plaintiff asked for a case to be returned to MDA for reassignment, Mr. Pfeiff wrote Plaintiff a letter terminating her employment contract "without cause." Compl. ¶ 38. She later discovered that the County provided enough funding for additional compensation as well as additional attorneys. She also discovered that all other Caucasian attorneys were paid more than Plaintiff. Consequently, Plaintiff's complaint is sufficient to state a claim for relief against both defendant MDA and Mr. Pfeiff.

As to Ms. Morse, there are no allegations that she made the decision to terminate Plaintiff based on her race or gender or compensated her in a discriminatory manner. Plaintiff fails to allege some action by Ms. Morse that she made the decision to terminate Plaintiff with a discriminatory motive. Plaintiff's complaint contains no allegations that Ms. Morse took any individual action with regard to Plaintiff or her contract. Consequently, Plaintiff's twelfth claim against Ms. Morse fails.

**C.   Intentional Infliction of Emotional Distress (Claim 13)**

Defendants move to dismiss Plaintiff's thirteenth claim for intentional infliction of emotional distress because Plaintiff's claim fails to allege extreme or outrageous conduct by MDA. In response, Plaintiff alleges "that she was forced to accept an unlimited number of cases" and when she "refused a case, she was terminated from her employment on the same day." (Doc. 19 at 12-14). Plaintiff's complaint further alleges that she was asked to work on too many cases by MDA and that she was not properly compensated for her work. She consistently informed MDA that her caseload was too large, but MDA responded that "the economy was not good, and that the County's budget" could not accommodate her request for increased compensation. Compl. ¶ 11. According to Plaintiff, she was given significantly more duties with significantly less pay not because MDA could not afford to pay her more or add additional staff, but because she was a black female. Compl. ¶ 85. Due to her overwhelming caseload, Plaintiff "began to feel extremely anxious, stressed, and humiliated due her inability to change the situation." Compl. ¶ 34. Plaintiff alleges that these actions by MDA and the lawyer defendants caused her "extreme emotional distress in that it was extreme and outrageous." Compl. ¶ 86.

14

Under California law, the elements of the tort of intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 54 Cal. 3d 868 (Cal. 1991).

As a matter of law, Plaintiff's allegations are not sufficiently outrageous conduct. *See Hegelson v. American Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) ("not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; for liability, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"); *but cf. Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 496-97 (Cal. 1970) (holding an African-American plaintiff's IIED claim survives demurrer where plaintiff's supervisor violently and repeatedly shouted an obscene racial epithet before firing him).

Here, the actions complained of are within ordinary personnel management actions. A claim for IIED arises when there is "outrageous conduct by the defendant" proximately causing emotional distress. *Agarwal v. Johnson*, 25 Cal.3d 932, 946 (1979). The conduct in question must be "more than mere insult, indignities, threats, annoyances, petty oppressions, or other trivialities." *Iverson v. Atlas Pacific Engineering*, 143 Cal.App.3d 219, 231 (1st Dist. 1983). Of paramount importance to this action "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996) (The court "note[d] that the remedy for personnel management decisions, even where improperly motivated, is 'a suit against the employer for discrimination," not an IIED claim). Thus, actions that are within the realm of ordinary personnel actions by an employer—such as hiring, firing, setting duties and priorities—are insufficient to support a claim of IIED even when those decisions are motivated by improper

1    considerations such as retaliation or discrimination. *Id.*

2         The actions alleged against MDA and the lawyer defendants are actions well within the

3    realm of personnel management.  Those actions include assigning cases, determining the scope of

4    Plaintiff's duties, and setting compensation for Plaintiff's position.  These actions are the sorts of

5    actions normally within the realm of personnel management decision making and therefore do not

6    ordinarily support a claim for intentional infliction of emotional distress. However, while Plaintiff's

7    allegations concerning Defendants' conduct may be insufficient to differentiate the alleged conduct

8    from normal personnel management actions, the deficiencies do not demonstrate that Plaintiff

9    would not be able to amend to allege a viable IIED claim against Defendants based on

10   discriminatory practices. *See Burris v. AT&T Wireless, Inc.*, 2006 U.S. Dist. LEXIS 52437, *2

11   (N.D. Cal. July 19, 2006). This is particularly true because Plaintiff alleges that Defendants' actions

12   were motivated by discriminatory animus. Accordingly, Plaintiff's thirteenth claim for relief should

13   be dismissed with leave to amend.

14   **D.    Wrongful Termination in Violation of Public Policy (Claim 14)**

15        The fourteenth claim for relief alleges that Plaintiff was wrongfully terminated in violation

16   of public policy.  Plaintiff's *Tameny* claim alleges that MDA "terminated [her] on the same day that

17   she refused to accept a case that would violate her mandatory ethical obligations contained in the

18   Rules of Professional Conduct."  Compl. ¶ 89.  Defendants move to dismiss Plaintiff's wrongful

19   termination claim because it fails to allege a proper statutory basis.   According to Defendants,

20   Plaintiff's allegations that she was paid unfairly and that her contract was terminated are complaints

21   of personal and proprietary interest and not based on statute.  *Miklosy v. Regents of University of*

22   *Cal.*, 44 Cal. 4th 876, 899-900 (2008).

23        Unless the parties contract otherwise, employment relationships in California are ordinarily

24   "at will", meaning that an employer can discharge an employee for any lawful reason. *See* Cal.

25   Labor Code § 2922. However, in *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), the

26   California Supreme Court carved out an exception to the at-will rule by recognizing a tort cause of

27   action for wrongful terminations that violate public policy. *Tameny*, 27 Cal. 3d at 178; *Freund v.*

28   *Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003).  Since *Tameny*, the California Supreme

Court has elaborated on its meaning of "public policy" sufficient to support a wrongful termination claim. *See Green v. Ralee Engineering Co*., 19 Cal. 4th 66, 78-79 (Cal. 1998) (analyzing California Court decisions clarifying the scope of the wrongful termination tort claim).

In *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164 (1997), the California Supreme Court held that, under most circumstances, an in-house attorney could maintain "a retaliatory discharge claim against his or her employer . . . [if] the attorney was discharged for following a mandatory ethical obligation prescribed by professional rule or statute." *General Dynamics,* 7 Cal.4th at 1188. The Court's reference to "professional rule" was specifically to the Rules of Professional Conduct, a code of conduct adopted pursuant to statute by the California State Bar with the approval of the California Supreme Court and binding on all attorneys in the state. *See* Bus. & Prof. Code, § 6076, 6077.) The Court implicitly recognized that claims rooted in statutorily based administrative regulations, such as the Professional Rules of Conduct, are permitted under *Tameny. See also Green*, 19 Cal. 4th at 78-79.

The Court finds that Plaintiff has alleged sufficient facts as to MDA supporting her argument that MDA asked or implicitly expected Plaintiff to violate the Rules of Professional Conduct by taking an inordinate amount of cases. Plaintiff also alleges that she was terminated by MDA when she refused to take a single case in order to uphold her duty under the Professional Rules of Conduct. Further, because Plaintiff's race and sex discrimination claims survived dismissal under FEHA, "so too does her claim for wrongful termination in violation of public policy." *Earl v. Nielsen Media Research, Inc*., 658 F.3d 1108, 1118 (9th Cir. 2011); *see also Walker v. Brand Energy Servs., LLC*, 726 F. Supp. 2d 1091, 1106 (E.D. Cal. 2010) (noting FEHA race discrimination violations may give rise to common law wrongful discharge claims). Accordingly, MDA's motion to dismiss Plaintiff's Fourteenth claim should therefore be DENIED.

As to the lawyer defendants, Plaintiff's fourteenth claim fails. The California Supreme Court has held that an "individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy . . . ." *Miklosy*, 44 Cal.4th at 900-01; *Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320, 330 (2009). Here, Plaintiff alleges that MDA is her employer. The lawyer defendants therefore cannot be held liable for this tort. Dismissal with prejudice of this

17

1   claim as to the lawyer defendants is appropriate.

2   **E.      Breach of Implied Covenant of Good Faith and Fair Dealing**

3            Plaintiff's final cause of action is for breach of the implied covenant of good faith and fair

4   dealing. Plaintiff's complaint alleges that Defendants terminated her contract "nine months early

5   without *good* cause" after Plaintiff complained about workloads, compensation, and differential

6   treatment" in violation of the implied covenant of good faith and fair dealing.  Compl. ¶ 91-92.

7   (emphasis added).   Defendants respond that Mayfield-MDA contract explicitly provided, among

8   other things, that Plaintiff's employment was at-will and subject to termination without cause.

9   (Doc. 13 at 23).   At issue is whether Plaintiff has adequately alleged a violation of the implied

10  covenant of good faith and fair dealing in light of the express at-will provisions in the Mayfield-

11  MDA contract.

12           California law is clear: an express at-will agreement precludes the existence of an implied-

13  in-fact contract. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000); *see also Halvorsen v.*

14  *Aramark Unif. Servs., Inc.*, 65 Cal. App. 4th 1383 (Ct. App. 1998). An at-will provision in an

15  employment application sufficiently creates an at-will employment relationship that cannot be

16  overcome by parol evidence of implied limitations to the at-will relationship. *See Gianaculas v.*

17  *Trans World Airlines, Inc.*, 761 F.2d 1391, 1394 (9th Cir. 1985). Because "there cannot be a valid

18  express contract  and an implied contract, each embracing the same subject, but requiring different

19  results," allegations of an implied for-cause contract cannot rebut the employee's status as an at-

20  will employee. *See Rochlis v. Walt Disney Co*., 19 Cal. App. 4th 201 (Ct. App. 1993), *overruled on*

21  *other grounds* in *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (Cal. 1994).

22           Thus, a terminated employee who fails to establish anything but an at-will employment

23  agreement is precluded from recovering for breach of the implied covenant of good faith and fair

24  dealing. *Guz*, 24 Cal.4th at 350-352 ("Because the implied covenant protects only the parties' right

25  to receive the benefit of their agreement, and in an at-will relationship there is no agreement to

26  terminate only for good cause, the implied covenant standing alone cannot be read to impose such a

27  duty.").   For that reason, when an employee's written contract is unambiguously at-will, the

28  employee cannot maintain a cause of action for breach of the implied covenant of good faith and

1    fair dealing based on the claim that she was fired without cause. *See id.*

2         There is no dispute that Plaintiff expressly agreed to at-will employment which could be
3    terminated by either party at any time.   Plaintiff does not allege facts challenging the at-will
4    provision in the Mayfield-MDA contract nor does she attempt to plead around the existence of the
5    agreement.   Thus, in seeking to challenge her termination without cause, Plaintiff is in effect
6    seeking to use the implied covenant of good faith to eliminate a term of the express agreement
7    reached by the parties. *See Halvorsen*, 65 Cal. App. 4th at 1390.   Under *Guz* and *Halvorsen*,
8    however, Plaintiff's claim is invalid.

9         Accordingly, the Court should GRANT Defendants' Motion as to Plaintiff's Fifteenth
10   claim. Further, the Court determines that allowing amendment as to this claim would be futile, and
11   recommends this claim be DISMISSED without leave to amend.

12   **F.    Plaintiff's Claim or Prayer for Punitive Damages Should Be Dismissed**

13        Finally, Defendants move to strike Plaintiff's request for relief in the form of punitive
14   damages on the grounds that Plaintiff has not pled sufficient facts to establish punitive damages
15   under 42 U.S.C. § 1981.

16        The Court declines to strike Plaintiff's prayer for punitive damages under §1981.   The
17   Supreme Court has established that punitive damages are available against individual defendants
18   under 42 U.S.C. § 1981 "when the defendant's conduct is shown to be motivated by evil motive or
19   intent, or when it involves reckless or callous indifference to the federally protected rights of
20   others." *Smith v. Wade*, 461 U.S. 30, 35-36 (1983). The Supreme Court has clarified that this
21   standard focuses not on whether the defendant's behavior was objectively "egregious," but rather on
22   the defendant's subjective motive or intent. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535
23   (1999). The Ninth Circuit has determined that this test applies equally to claims against individual
24   defendants under Section 1981 as it does to claims under Section 1983. *Woods v. Graphic*
25   *Communications*, 925 F.2d 1195, 1206 (9th Cir. 1991).

26        Plaintiff has alleged that the Defendants acted with the requisite state of mind to qualify for
27   punitive damages. Whether Plaintiff is able to prove those allegations remains to be seen, but the
28   Court declines to resolve this issue prematurely by way of a motion to strike. *See Friedman v. 24*

*Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (explaining that motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").

**G.    Leave to Amend**

Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  This "policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Here, as the allegations are such that amendment may permit Plaintiff to state sufficient plausible claims, the Court grants leave to amend all claims not expressly dismissed without leave.

**CONCLUSION AND RECOMMENDATIONS**

For the foregoing reasons, it is HEREBY RECOMMENDED that dismissal should be entered as follows:

1.    The motion to dismiss the Fourth and Seventh Title VII claims for relief should be GRANTED.  Plaintiff's fourth and seventh claims of relief against Defendants MDA and Cindy Morse and Thomas Pfeiff as individuals should be DISMISSED, without leave to amend.

2.    The motion to dismiss the Fifth, Eight, Ninth and Tenth claims for relief should be DENIED in part and GRANTED in part as follows:

    A.    Plaintiff's Fifth, Eight, Ninth and Tenth claims for relief against Defendant MDA should be DENIED;

    B.    Plaintiff's Fifth, Eight, Ninth and Tenth claims for relief against Defendants Cindy Morse and Thomas Pfeiff as individuals should be DISMISSED, without leave to AMEND.

3.    The motion to dismiss the Twelfth claim for relief should be GRANTED in part and DENIED in part as follows:

    A.    Plaintiff's Twelfth claim for relief under 42 U.S.C § 1981 against Defendants MDA and Thomas Pfeiff as an individual should be DENIED;

1    B.    Plaintiff's Twelfth claim for relief against Defendant Cindy Morse as an

2          individual should be DISMISSED, with leave to AMEND.

3    4.    The motion to dismiss the Thirteenth Claim for Relief should be GRANTED.

4    Plaintiff's Thirteenth claim for relief against Defendants MDA and Cindy Morse and

5    Thomas Pfeiff as individuals should be DISMISSED, with leave to amend.

6    5.    The motion to dismiss the Fourteenth Claim for Relief for wrongful termination in

7          violation of public policy should be GRANTED in part and DENIED is part as

8          follows:

9          A.    Plaintiff's Fourteenth claim for relief against Defendants should be

10               DENIED;

11         B.    Plaintiff's Fourteenth claim for relief against Defendants Thomas Pfeiff and

12               Cindy Morse as individuals should be DISMISSED, without leave to AMEND.

13   6.    The motion to dismiss the Fifteenth Claim for Relief for breach of the implied

14   covenant of good faith and fair dealing against Defendants MDA and Cindy Morse and

15   Thomas Pfeiff as individuals should be GRANTED. Plaintiff's Fifteenth claim of relief

16   against Defendants MDA and Cindy More and Thomas Pfeiff as individuals should be

17   DISMISSED, without leave to amend.

18   7.    Defendant's Motion to Strike Plaintiff's punitive damages should be DENIED.

19   The amended complaint shall be filed within thirty (30) days from the date of adoption of

20   the findings and recommendations.  If Plaintiff opts to amend, her complaint should meet the same

21   requirements that applied to her previous complaint: it should be brief, but must state facts

22   supporting allegations as to the harm caused by each defendant. Fed. R. Civ. P. 8(a); *Iqbal* at 678.

23   Plaintiff is advised that an amended complaint supersedes the original complaint. *Forsyth v.*

24   *Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

25   1987). In addition, an amended complaint must be "complete in itself without reference to the prior

26   or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in

27   an original complaint which are not alleged in an amended complaint are waived." *London v.*

28   *Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981).  Finally, Plaintiff may not plead new

causes of action, but may only revise causes of action that she pled in her previous complaint.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 6, 2014**                          /s/ *Barbara A. McAuliffe*
                                                          UNITED STATES MAGISTRATE JUDGE