UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANGELA D. MAYFIELD,

             Plaintiff,

vs.

COUNTY OF MERCED, et al.,

             Defendants.

_____/

CASE NO. CV F 13-1619 LJO BAM

**FINDINGS AND RECOMMENDATIONS ON THE COUNTY OF MERCED'S F.R.Civ.P. 12 MOTION TO DISMISS (Doc. 14)**

**ORDER DENYING THE COUNTY OF MERCED'S MOTION FOR SANCTIONS AND DENYING PLAINTIFF'S MOTION TO STRIKE (Docs. 26, 36).**

## INTRODUCTION

Defendant the County of Merced ("County" of "Defendant") seeks to dismiss *pro se* Plaintiff Angela D. Mayfield's ("Plaintiff" or "Ms. Mayfield") discrimination and retaliation claims as legally barred and insufficiently pled.[1]  The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for March 28, 2014.  For the reasons discussed below, Defendant's Motion to Dismiss should be GRANTED in part.

---

[1]   In addition to the County, Ms. Mayfield's operative Complaint for Damages ("Complaint") names as defendants Cindy Morse ("Ms. Morse"), Thomas Pfeiff ("Mr. Pfeiff") and Law Office of Morse & Pfeiff, dba Merced Defense Associates ("MDA").  Ms. Morse, Mr. Pfeiff and MDA filed their own motion to dismiss which the Court addresses by a separate order.

# BACKGROUND[2]

## Summary

Plaintiff's action arises from her work as an attorney with the Law Offices of Morse and Pfeiff, doing business as Merced Defense Associates ("MDA").  Ms. Mayfield was hired as an attorney by MDA to perform juvenile criminal defense work under MDA's contract with the County to provide public defender services.  MDA serves as the County's primary contractor to represent indigent criminal defendants when conflicts of interest arise with the County's Public Defender. Ms. Mayfield, Ms. Morse, and Mr. Pfeiff are California-licensed attorneys who provided such criminal defense representation.  Ms. Morse and Mr. Pfeiff are co-owners and principals of MDA, a general partnership.   In September 2012, MDA terminated its relationship with Ms. Mayfield, an African-American. Plaintiff's complaint alleges numerous claims based on race and gender discrimination, retaliation, and related claims arising out of her relationship with MDA and its termination.

## The Instant Action

Ms. Mayfield initiated this action on October 8, 2013.  (Doc. 1).  In her complaint, Plaintiff asserts fifteen causes of action against the County: (1) negligent supervision of a statutory duty under California Penal Code § 987.2(a); (2) failure to discharge a statutory duty under California Penal Code §987.2; (3) vicarious liability for MDA's negligence and intentional torts under Government Codes §§815.2(a) and 815; (4) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*; (5) race and sex discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940, *et seq*; (6) failure to prevent discrimination in violation of FEHA; (7) retaliation in violation of Title VII; (8) retaliation in violation of FEHA; (9) violation of the Equal Pay Act of 1963  ("EPA"), 29 U.S.C. § 206, *et seq*.;   (10) violation of California Equal Pay Act, Cal. Labor Code § 1197.5 ("CEPA"); (11) racial discrimination in violation of 42 U.S.C. § 1983; (12) violation of the Civil

---

[2]    This factual recitation summarizes the complaint and other matters which this Court may consider.

2

Rights Act of 1866 (42 U.S.C. §1981, *et seq.*); (13) intentional infliction of emotional distress; (14) wrongful termination in violation of public policy; and (15) breach of the implied covenant of good faith and fair dealing.

**Independent Contractor Agreement**

**A.      MDA's Contract For Indigent Defense Services With The County**

In May 2003, MDA and the County entered into their Contract for Indigent Defense Services ("County-MDA contract") by which MDA agreed to provide indigent criminal defense services in matters where a conflict of interest with the County Public Defender arises.   The County-MDA contract provides that MDA is "an independent contractor in the performance of the work and obligations" under the MDA-County contract.   The MDA-County contract further provides that:

1.      The County lacks "control or direction over the methods by which ATTORNEY [MDA] shall perform the ATTORNEY's its [sic] professional work and functions";

2.      "[N]o employer-employee relationship is created and ATTORNEY shall hold COUNTY harmless and be solely responsible for withholding, reporting and payment of any federal, state or local taxes, contributions or premiums imposed or required by workers' compensation, unemployment insurance, social security, income tax, other statutes or codes applying to ATTORNEY, or its sub-contractors and employees";

3.      MDA "shall maintain under contract a sufficient number of attorneys . . . to provide adequate legal defense services to indigent defendants";

4.      MDA is required to have "all personnel required provide the services" under the MDA-County contract;

5.      MDA's "personnel expressly agreed that they are not employees of the COUNTY";

6.      MDA is required to maintain liability, automobile, workers' compensation and professional liability insurance; and

7.      MDA "agrees to hold harmless, defend, and indemnify COUNTY, its officers, agents, and employees from any and all claims and losses occurring or resulting from the acts and omissions of ATTORNEY, ATTORNEY's agents, or employees . . ."

3

**B.      Ms. Mayfield's Contract For Indigent Defense Services With MDA**

In the most recent version of their contract, Ms. Mayfield and MDA entered into a June 27, 2012 Contract for Indigent Defense Services ("Mayfield-MDA contract") and which provides:

1.      "ATTORNEY [Ms. Mayfield] is an independent contractor and is not an employee, agent or principal of MERCED DEFENSE ASSOCIATES, nor of any other attorney with whom MERCED DEFENSE ASSOCIATES enters into an agreement to provide indigent legal services. The ATTORNEY is and shall at all times be deemed independent and shall be wholly responsible for the manner in which he/she performs the services required by the terms of this agreement";

2.      "[N]o employer/employee relationship is created and ATTORNEY shall hold MERCED DEFENSE ASSOCIATES harmless and be solely responsible for withholding, reporting and payment of any federal, state and local taxes, contributions or premiums imposed or required by Workers Compensation, unemployment insurance, social security, income tax, other statutes or codes applying to ATTORNEY, or its agents and employees, if any.  The ATTORNEY, his agents and employees shall not be considered in any manner to be employees of MERCED DEFENSE ASSOCIATES."

<u>**Factual History**</u>

Plaintiff began work for MDA in February 2005. Plaintiff's Complaint ("Compl.") ¶ 10, Doc. 1.  Plaintiff's complaint alleges that she became dissatisfied with her case load and the compensation she received from MDA and made multiple complaints to MDA regarding those issues.   Compl. ¶ 8. During her tenure with MDA, Plaintiff discovered that her Caucasian male coworkers received higher overall compensation and higher starting pay than she was offered.   Compl. ¶ 26. Plaintiff also alleges that on September 7, 2012, while she and Mr. Pfeiff were both in court, Plaintiff told a judge that she could not accept an additional case because her case load was too large and that she was addressing the issues with MDA.  Compl. ¶ 12.

On September 10, 2012, MDA notified Plaintiff that it was terminating her contract "without cause."  Compl.  ¶ 13.  After receiving notice of the termination, Plaintiff met with County executive officer Angelo Lamas to discuss her termination.  Compl.  ¶ 13. During their discussion, Mr. Lamas advised Plaintiff regarding the rate the County paid for indigent defense attorneys. Compl.  ¶ 13.

After meeting with Mr. Lamas, Plaintiff alleges that she realized that the County provided enough funding to pay her more and to provide additional attorneys.  Compl. ¶ 39.

Plaintiff filed a charge of discrimination under the California Fair Employment and Housing Act ("FEHA") and she received a right-to-sue letter on April 30, 2013. Compl. ¶ 31; Exh. D. She filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on September 4, 2013. Compl. ¶ 3, Exh. C. Plaintiff alleges that Defendant discriminated against her through its agent MDA based on her race and sex by failing to assign her a case load comparable to that of her white colleagues.   Further, Plaintiff alleges that she performed the same job duties as her white male coworkers, yet she was paid a lower wage for such work based on her race and sex.  Compl. ¶ 34.

On January 8, 2014, Defendant filed the now pending motion to dismiss.  In response, Plaintiff filed an opposition on March 14, 2014, and Defendant filed a reply on March 24, 2014.  The Court deemed this matter suitable for decision without oral argument and vacated the scheduled hearing pursuant to Local Rule 230(g).

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).   While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. at 556).  Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A complaint] must contain sufficient allegations of underlying facts to give fair notice . . . [to] the opposing party . . . [and] must plausibly suggest an entitlement to relief").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Although review under Rule 12(b)(6) is generally limited to the contents of the complaint, the Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court required to accept as true allegations that are conclusory or the product of unwarranted deductions of fact. *Id.* Finally, if the court concludes that dismissal is warranted under Rule 12(b)(6), the dismissal should be with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### A.   California Government Code Claims

Plaintiff brings three claims against the County under California Government Code section 815(a) for the County's payment of unreasonable compensation in a discriminatory manner. California Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." Plaintiff contends the County violated California Penal Code § 987.2 because under section 987.2(a), the County has a statutory duty to provide a "reasonable compensation" to attorneys appointed to "represent indigent adults or minors charged with a crime." Cal. Pen. Code § 987.2(a).

In Plaintiff's first three causes of action, she alleges that because MDA distributed the

County's funds in a discriminatory manner in violation of statutory duty under section 987.2(a): (1) the County is liable for negligently failing to supervise MDA's compliance with the statute; (2) the County failed to "discharge its statutory duty" by failing to ensure that MDA was providing reasonable compensation; and (3) the County is vicariously liable for the acts of its employee MDA's negligence in improperly compensating Plaintiff for her time. Compl. ¶¶ 51-58.  The Court addresses each cause of action in turn.

### 1.      Negligent Supervision of a Statutory Duty

Plaintiff's first cause of action alleges that under California law, the County has a mandatory duty to supervise the payment of reasonable compensation to court appointed attorneys.  Plaintiff alleges that the County negligently supervised its statutory duty to ensure that "assigned counsel…receives a reasonable sum for compensation" because MDA failed to pay Plaintiff a reasonable sum based on her workload.  Cal. Pen. Code  § 987.2(a).  The County argues that Plaintiff's claim must fail because the County, as a public entity, has no liability for torts.

In California, all government tort liability must be authorized by statute. Cal. Gov. Code § 815; *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 n.2 (1985); *Morris v. State of California*, 89 Cal. App. 3d 962, 964 (Cal. App. 2d Dist. 1979). The statute claimed imposing the duty of care, in or to establish the tort liability, must be identified, since the duty of a governmental agency can only be created by statute. *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (Cal. App. 4th Dist. 1986).

Plaintiff alleges that the source of the County's purported duty is California Penal Code section 987.2(a).  Plaintiff argues that the County is under a mandatory duty pursuant to § 987.2(a) to ensure that its indigent services funds are paid out in a reasonable manner.

California courts, however, construe the mandatory duty requirement strictly, "finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (Cal. 2009).  Liability is deemed "provided" by statute if the statute defines the tort in general terms.  *Lopez*, 40 Cal.3d at 785 n. 2 (finding a duty of care was imposed by the express statutory language at issue); *Bates v. Franchise Tax Bd.*, 124 Cal.App.4th 367 (2004) (statute at issue authorized a "civil action against an agency" for

specified conduct*); Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1126 (9th Cir. 2013) (a liability-creating statute must clearly withdraw statutory immunities).  Thus, the Court must examine the statutory language at issue to determine whether a duty of care is imposed.

Penal Code §987.2(a) does not describe any kind of tort liability.  Rather, it defines terms for the scope of legal representation, payment and compensation. Section 987.2 provides that "assigned counsel shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court." The legislative purpose was to equalize pay disparity between private counsel and public defenders.  Pen.Code § 987.2(f).  No language in the statute withdraws immunities of the County or otherwise permits tort liability.  Further, Penal Code section 987.2(a) does not provide implementing guidelines for the supervision of the payment of reasonable services to attorneys appointed by the County. The statute contains no requirement that the County supervise and monitor administrative practices nor does it express any duty related to how the County should schedule, manage, or pay its employees or independent contractor attorneys.  Accordingly, § 987.2 does not authorize tort liability.

Finally, as a matter of law, Plaintiff's may not sue Defendant for a violation of the Penal Code. *See Gonzaga University v. Doe*, 536 U.S. 273, 283-86 (2002) (basing a claim on an implied private right of action requires a showing that the statute both contains explicit rights-creating terms and manifests an intent to create a private remedy); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for violation of criminal statutes).

"A statute creates a private right of action only if the enacting body so intended." *Farmers Ins. Exch. v. Superior Court,* 137 Cal. App. 4th 842, 849 (2006) (*citing Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 305 (1988). "That intent need not necessarily be expressed explicitly, but if not it must be strongly implied." *Id.* (*citing Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* 70 Cal. App. 4th 55, 62 (1999)). Private rights of action under criminal statutes have rarely been implied, and when one has been read into a criminal statute "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Chrysler Corp v. Brown*, 441 U.S. 281, 316 (1979).

8

Section 987.2 does not contain language suggesting that civil enforcement is available to Plaintiff.  Plaintiff fails to cite authority showing the California Legislature intended to create private rights of action under the statute here. *See Agric. Ins. Co., v. Superior Court*, 70 Cal. App. 4th 385, 400 (1999) (finding that dismissal of plaintiff's claim under Section 550 of the California Penal Code was proper because plaintiff did not cite or suggest anything indicating the Legislature's "silent" intent, nor why, if the Legislature did so intend a private right of action, it did not simply say so); *Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192, 1212 (E.D. Cal. 2008) (dismissing claim because Plaintiffs "fail to demonstrate how their cited California Penal Code sections create private rights of action"); *see also Harvey v. City of South Lake Tahoe*, CIV S-10-1653 KJM EFB PS, 2011 U.S. Dist. LEXIS 87944, 2011 WL 3501687 at *7 (E.D. Cal. Aug. 9, 2011) (finding plaintiff's claims under Sections 182, 849, and 484 of the California Penal Code failed because plaintiff did not argue that private causes of action were implied, and because there was no indication in the statute that civil enforcement was available to plaintiff).

Here, Plaintiff's reference to section 987.2(a) does not establish tort liability for the County and therefore Plaintiff fails to identify a statute creating liability in her complaint as required. Plaintiff's complaint does not invoke a statute prescribing liability and therefore the County cannot be held directly liable for the negligent supervision of MDA.  Accordingly, Plaintiff's first cause of action against the County must be dismissed without leave to amend.

### 2.    Failure to Discharge a Statutory Duty

Plaintiff's second cause of action is based upon the allegation that the County has "a mandatory duty to pay a reasonable sum for compensation and necessary expenses of counsel appointed to represent indigent persons charged with crime." *Avan v. Municipal Court for Los Angeles Judicial Dist.*, 62 Cal. 2d 630 (Cal. 1965) (writ of mandate issued commanding the Court to pay a reasonable sum for compensation to public defender under the "mandatory duty" to pay a reasonable sum). Plaintiff alleges that the County's failure to ensure that MDA paid her a reasonable compensation is a breach of the County's mandatory statutory duty. In opposition, the County argues that Penal Code section 987.2(a) does not create a mandatory obligation on the County to insure that all attorneys who have contracted with MDA be compensated equally. (Doc. 14 at 16). Further, the

County argues that to be liable under Government Code section 815.6, Plaintiff must establish that her injury was proximately caused by the County's failure to comply with its duty. According to Defendant, the County cannot be liable under section 815.6 because Plaintiff cannot establish that the County's failure to provide reasonable compensation to MDA caused her injury.

California Government Code § 815.6 provides as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Government Code section 815.6 contains a three-pronged test to determine whether liability may be imposed on a public entity: "(1) an enactment must impose a mandatory, not discretionary, duty ...; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability ...; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." *Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1458 ("in absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable").

Whether the enactment imposes a "mandatory duty" is a question of statutory interpretation for the court. *Guzman,* 46 Cal. 4th at 898. "To construe a statute as imposing a mandatory duty on a public entity, the mandatory nature of the duty must be phrased in explicit and forceful language." *Id.* at 898-899. The California Supreme Court has rejected attempts by plaintiffs to find a mandatory duty based on an "implied duty" read into a statute. *Id.* at 902–911 (finding no liability under the Safe Drinking Water Act (Health & Saf. Code, § 116270 et seq.) based on an implied duty to notify customers, where the only directive imposed by the statute was a duty to review a water system's monitoring reports.).

Plaintiff's argument that the County failed to discharge its statutory duty is flawed for two reasons. First, Section 987.2 does not impose a mandatory duty on the County to ensure that each individual attorney is reasonably compensated. Penal Code section 987.2(a) explicitly states that "counsel shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county." The statute

10

merely directs the County to fund indigent services.  Although the parties do not dispute that government entities in California have a mandatory obligation to provide legal representation to indigent criminal defendants, the statute's language does not impose on the County a mandatory duty to oversee the distribution of funds, and such a duty cannot be reasonably inferred.

Second, even assuming section 987.2 imposes a mandatory duty, the statute does not impose a mandatory duty for the injury alleged.  Plaintiff's complaint is predicated on her allegation that MDA failed to reasonably compensate her.  However, Plaintiff alleges in her complaint, and concedes in her opposition, that the County provided reasonable compensation to MDA for services MDA provided to indigent defendants.  (Doc. 20 at 9). There is no allegation that the County failed to pay a reasonable sum for compensation to MDA.  Section 987.2 does not impose a mandatory duty upon the County to ensure that MDA provide attorneys with a reasonable sum for their services.  Thus, even if section 987.2(a) imposes a mandatory duty to provide reasonable compensation, the statute does not protect against the type of injury suffered by Plaintiff.  Plaintiff's second cause of action should therefore be dismissed without leave to amend.

### 3.     Vicarious Liability for MDA's Negligence

In her third cause of action, Plaintiff alleges that the County is vicariously liable for MDA's torts under Cal. Gov. Code sections 815.2(a) and 815.4.  Compl. ¶ 57.

The California Government Tort Claims Act provides that a public entity is not liable for any injury except as provided by statute. *See* Cal. Gov. Code § 815. However, a public entity may be vicariously liable under Government Code section 815.2, providing for *respondeat superior* liability for acts or omissions of employees, and Government Code section 815.4, providing for liability for acts or omissions of independent contractors to "the same extent that the public entity would be subject to such liability if it were a private person."  Cal. Gov. Code § 815.4

In her complaint, Plaintiff alleges that the County was acting through its employee MDA and as a result, the County is liable for any wrongful or tortious activities by the employees. However, MDA, a general partnership, is not an employee of the County and her complaint does not contain any factual allegations to establish vicarious liability predicated on the conduct of an independent contractor.

11

To the extent that Plaintiff argues that the County could not delegate its duty to provide reasonable compensation to MDA, her argument likewise fails.

California Government Code Section 815.4 provides:

A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act of omission been that of an employee of the public entity.

As a general rule, a private person is not liable for the tortious acts of their independent contractors. *Snyder v. Southern Cal. Edison Co.*, 44 Cal.2d 793, 800 (1955); *see O'Gan v. King City Joint Union High Sch. Dist.*, 3 Cal. App.3d 641, 646 (1970). However, a nondelegable duty creates an exception if the law imposes a definite affirmative duty which cannot be avoided by entrusting it to an independent contractor. A nondelegable duty is a duty which cannot be avoided by entrusting it to an independent contractor. "Nondelegable duties may arise when a statute provides specific safeguards or precautions to insure the safety of others." *Padilla v. Pomona Coll.*, 166 Cal. App. 4th 661, 671-72 (2008) (internal citations omitted). It is the nature of the regulation itself that determines whether the duties it creates are non-delegable. *Id.*

California Penal Code Section 987.2 does not create a nondelegable duty for the County to ensure that independent contractors or employees of independent contractors are paid equally. Penal Code Section 987.2 mandates the County fund indigent attorney services. Providing funding for legal representation to indigent defendants does not create a duty to ensure reasonable compensation for particular attorneys. Plaintiff concedes the County satisfied its funding responsibility. "[T]he doctrine of nondelegable duty does not, here, create a duty where none would otherwise exist." *Chee v. Amanda Goldt Prop. Mgmt.*, 143 Cal. App. 4th 1360, 1375 (2006). As discussed above, Plaintiff cannot establish that the County has a mandatory duty to ensure reasonable compensation for her legal services pursuant to Penal Code section 987.2.

Accordingly, the Court should dismiss Plaintiff's third cause of action against the County without leave to amend.

## B.     Failure to Adequately Allege an Employment Relationship

Plaintiff brings seven claims for which she must demonstrate that she was an "employee" of

12

the County of Merced.   Claims four through eight are all brought under Title VII or FEHA, "which predicates potential . . . liability on the status of the defendant as an 'employer.'" *Kelly v. Methodist Hosp. of S. Cal.*, 22 Cal. 4th 1108, 1116 (2000) (*quoting* Cal. Gov't Code § 12926).[3]   Claim nine, violation of the Equal Pay Act under the Fair Labor Standards Act ("FLSA"), and claim ten, violation for unequal pay under the California Labor Code, may only be brought against an employer. *Northwest Airlines v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 92 (1981) (the Equal Pay Act is "expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees"; Cal. Lab. Code § 2750.5 (addressing whether a worker is an employee).   Thus, to prevail on her employment discrimination and retaliation claims under Title VII, FEHA, the FLSA, and the California Labor Code, Ms. Mayfield must allege a factually sufficient, plausible claim that she was an "employee" of the County of Merced.

The Supreme Court created a list of factors federal courts use in determining whether a plaintiff is an employee or independent contractor under Title VII in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992). Under *Darden,* the primary inquiry to determine whether a plaintiff is an employee is "the [defendant's] right to control the manner and means by which the [plaintiff's work] is accomplished." *Darden*, 503 U.S. at 323. Some factors relevant to this inquiry are:

> [1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment;[8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment of the hired party.

*Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 945-46 (9th Cir. 2010).

Likewise, under California law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the "manner and means" of accomplishing the result desired." S. *G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d

---

[3]     The Court notes that while Plaintiff's claims are brought under Title VII *and* FEHA. Claims under FEHA are often analogous to claims under Title VII and generally are analyzed similarly.  *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 922-23 (9th Cir. 2000); *see also Clark v. Claremont University Center*, 6 Cal. App. 4th 639, 662 (1992) ("Although [FEHA and Title VII] differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of [FEHA].") (internal quotation marks and citation omitted).

341, 350 (1989). In addition, "California courts consider a number of additional factors, including: the right of the principal to discharge at will, without cause . . . whether the work is usually done under the direction of the principal . . . and whether the parties believe they are creating an employer-employee relationship." *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 581 (N.D. Cal. 2011).

In its motion to dismiss, the County argues that pursuant to statutory and common law definitions of "employee" it is not plausible that Plaintiff was an employee of the County. According to Defendant, the main factor to consider is the "right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323-24. The County alleges that it had no employer-employee relationship with Plaintiff as the County did not control the manner or means of her employment. Applying *Darden*, the County alleges that it does not provide Plaintiff with tools or facilities or assign her work; all cases that are assigned to Plaintiff are assigned by judges, who are employees of the state, not the County; and it has no input on how Plaintiff performs her duties. Further, the County has no means in which to control Plaintiff's work hours or pay her directly.

Plaintiff opposes dismissal by alleging that the County was her "employer both directly and indirectly." Compl. ¶ 12.

### 1.    Direct Employment

Plaintiff's complaint alleges that the County maintained direct control over her work. As alleged in her complaint, the contractual agreement between MDA and the County gave the County "power and authority to control the manner and means by which MDA and Plaintiff's services were to be performed." Compl. ¶ 12. She alleges that when read together, the County's contract with MDA and also Plaintiff's contract with MDA, establishes that the County dictated office access, office location, hours of operation, required monthly reports, training, and prohibited the contract attorneys from sharing offices…by virtue of their control of the funding." Compl. ¶ 13.

Ultimately, Plaintiff does not assert sufficient factual allegations to establish that the County was her direct employer, as Plaintiff's allegations are devoid of any relationship between Plaintiff and the County. First, Plaintiff does not allege that the County had any authority to hire or fire her; in fact, she alleges that MDA terminated her employment. Plaintiff also does not allege that the County supervised her work, nor does she allege that she reported to anyone at the County. Plaintiff does not

14

allege any contact with the County relating to her work representing indigent defendants, until after MDA elected to terminate their agreement.  Conclusory allegations that the County controlled the "manner and means" of her services are not accepted as true.  *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir.2007) (Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion).  While Plaintiff insists that the County is her employer because the County "dictated office access, office location, hours of operation, required monthly reports, training, and prohibited the contract attorneys from sharing offices," she does not allege any direct control over her work by the County or that the County had the power to control work details.

Plaintiff, moreover, has failed to allege sufficient facts under the common law agency test expressed in *Darden*. Plaintiff herself argues that her work took considerable skill, which suggests strongly that she was an independent contractor. Plaintiff does not allege that she worked in an office owned by the County, nor does she allege that the County provided her any tools or instrumentalities. Plaintiff does not allege that the Country controlled her work, as she was never compelled to take any case by the County.  Indeed, when Plaintiff refused to take additional cases, she communicated that request to the juvenile court judge employed by the State of California, not a County employee. Further, Plaintiff's contract with MDA indicates that she could have chosen to represent private litigants with her time, further indicating that she maintained control over her workload and not the County.

Although Plaintiff and the County did have a long working relationship, "all most eight years," there are no allegations that the County hired Plaintiff or paid her directly, or provided her with benefits. Plaintiff makes no allegations whatsoever as to any other factor that could establish that she was an employee of the defendants. Every factor in the analysis (except the length of the relationship), including the most important—the party in control of the means and manner through which the work was accomplished—logically can be interpreted in no other way than against the plaintiff, even while drawing all permissible inferences in her favor.

Accordingly, taking Plaintiff's factual allegations in the light most favorable to the Plaintiff, she has not alleged sufficient facts to show a plausible employer-employee relationship necessary under Title VII, FEHA, or California law.  Accordingly, Defendant's motion to dismiss Plaintiff's fourth, fifth, sixth, seventh and eight causes of action should be GRANTED, with leave to amend.

### 2.      "Indirect" employment

To the extent that Plaintiff alleges that the County was her indirect employer, her claims also fail.  There are insufficient allegations that Plaintiff had an "indirect" employment relationship with the County.

A Plaintiff may plead an indirect employment relationship with a defendant as a "joint employer." *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275-77 (9th Cir. 2003). Joint-employer liability under Title VII may be shown where "both employers control the terms and conditions of employment of the employee." *Id.* (internal quotation marks and citations omitted). In considering joint-employer status, the Ninth Circuit applies an "economic reality test" that "considers all factors relevant to the particular situation." *Id.*  For example, the Ninth Circuit has considered whether the joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled his work site. *See id.* at 1277; *Anderson v. Pac. Mar. Ass'n*, 336 F .3d 924, 927 (9th Cir. 2003).

Here, there are insufficient facts to indicate that Plaintiff had an implied or joint-employment relationship with the County.  Plaintiff has not alleged any facts to indicate that the County acted as a joint employer with MDA under the "economic reality test."  Additionally, no facts are alleged indicating that the County controlled the manner and means" of Plaintiff's employment.  Thus, Plaintiff's claims against the County based on an indirect employment relationship are not viable because Plaintiff has not pled any facts establishing that she had some type of employment relationship with the County.

Plaintiff claims that the County's contract with MDA taken together with her contract with MDA creates an employment relationship. To the extent that Plaintiff argues that the County maintained control over the relationships "by virtue of their control of funding," her argument fails.

Following Plaintiff's argument to its logical conclusion, any project or legislative act funded by the County would make each recipient a County employee. As discussed above, the law requires significant evidence of direct control beyond mere funding. Accordingly, these claims will be dismissed with leave to amend.

**C.     Deprivation of Civil Rights (42 U.S.C. §§ 1981 and 1983)**

**1.      42 U.S.C. § 1983**

In her eleventh cause of action, Plaintiff alleges that the County deprived plaintiff of her civil rights and her constitutional rights under color of state law  when the county's "Board of Supervisors denied Plaintiff's claim for compensation under Penal Code section 987.2(a) for services that she had rendered as assigned counsel." (Doc. 20 at 18).   According to Plaintiff, "the wrongful actions by the County's Board of Supervisions constituted wrongful conduct by a policymaker with final authority in the area of the conduct." Compl. ¶ 82.  In her opposition, Plaintiff further states that the County delegated its duty of fair compensation to Mr. Pfeiff who "acted under the color of law" when he performed the public function of setting and paying compensation under Penal Code section 987.2(a). (Doc. 20 at 18).  The County argues that Plaintiff's § 1983 claim must fail because Plaintiff fails to allege a policy or custom showing that MDA was acting pursuant to an expressly adopted official policy or was acting in the capacity of a final policymaker.  (Doc. 14 at 26).

Section 1983 subjects to liability any person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives another "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A government entity may be sued under § 1983 when governmental policy or custom is the cause of a deprivation of federal rights. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).  To establish liability, Plaintiff must show: (1) she was deprived of a constitutional right; (2) the County had a policy; (3) this policy amounted to deliberate indifference of her constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (*quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); There are three methods by which a policy or custom of a government may be demonstrated when:

17

(1)     A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;

(2)     The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

(3)     An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (*quoting Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

Here, Plaintiff has not satisfactorily alleged a policy, custom, or practice of the County implemented by persons having policy-making authority so as to substantiate a § 1983 claim.  The only direct action Plaintiff alleges against the County is that the "Board of Supervisors denied [her] claim for compensation under Penal code section 987.2(a) for services that she rendered as assigned counsel."  Compl. ¶ 82.  She claims that the County's denial came after Plaintiff provided them with evidence in support of her claims that she was compensated in a discriminatory manner by the County's agent, MDA.  According to Plaintiff, the actions by the "County's Board of Supervisors constituted wrongful conduct by a policymaker with final authority in the area of conduct."  Compl. ¶ 82.  Plaintiff does not allege that the Board of Supervisors denied her claim in a discriminatory fashion nor that any discrimination was based on a policy or custom.  Simply, she alleges that the County disagreed with her and denied her claim.  Instead, Plaintiff's claim is a bare averment that the Board of Supervisor's conduct conformed to an official, yet unnamed policy, custom or practice.  This conclusory statement, which is unsupported by any factual allegations as to what that "policy, custom, and practice' consists of, who established it, when, and for what purpose, does not

sufficiently allege a basis for *Monell* liability." *See Lutz v. Delano Union School Dist.,* 2009 U.S. Dist. LEXIS 69245, 2009 WL 2525760 (E.D. Cal. 2009)

Second, Plaintiff argues that the County delegated its duty to provide reasonable compensation to MDA, therefore the County is liable for Mr. Pfeiff's conduct.   The County argues that the actions of MDA and Mr. Pfeiff cannot be the basis for a section 1983 claim because they were not committed by an individual with whom the County designated policymaking authority.

Plaintiff cites *West v. Atkins*, 487 U.S. 42 (1988), to support her theory. *West* held that a physician who treated a prison inmate's injuries had acted under color of state law because the state had delegated to him the state's constitutional obligation to provide medical care to prisoners. *Id.* at 54. *West* is distinguishable. The County did not delegate a constitutional obligation to MDA to perform. Rather, the County sought out the contractual relationship with the MDA for handling conflict cases.  MDA's conduct is not converted to state action.  Indeed, *West* acknowledged that:

> the fact that the private entities received state funding and were subject to state regulation did not, without more, convert thier [sic] conduct  into state action. *See Blum v. Yaretsky*, 457 U.S., at 1004; *Rendell-Baker v. Kohn*, 457 U.S., at 840-843. The Court suggested that the private party's challenged decisions could satisfy the state-action requirement if they were made on the basis of some rule of decision for which the State is responsible. The Court found, however, that the decisions were based on independent professional judgments and were not subject to state direction. Thus, the requisite "nexus" to the State was absent.

*Id.* at 52 n. 10.  In the present case, MDA and/or Mr. Pfeiff allegedly decided to pay Plaintiff a discriminatory wage and administer her caseload in a discriminatory manner.  Plaintiff has not shown that the County was responsible for or directed this alleged discrimination.  As a result, there was no "nexus" to the state, and the exception presented in *West* applies.

On the face of the pleadings, Plaintiff has failed to allege sufficient allegations under Section 1983 because recovery under Section 1983 requires state action as a matter of law. Accordingly, the County is entitled to dismissal as to Plaintiff's eleventh cause of action with leave to amend.

### 2.      42 U.S.C. § 1981

Plaintiff also alleges, in her twelfth cause of action, that the County violated her rights under

42 U.S.C. § 1981.[4] Specifically, Plaintiff alleges that the County terminated her because of her race. Compl. ¶ 84. The County moves to dismiss this cause of action for violation of Section 1981 on the ground that Plaintiff's complaint fails to allege the existence of any contract.

Section 1981 is not "a general proscription of racial discrimination . . . it expressly prohibits discrimination only in the making and enforcement of contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989) (emphasis added). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id.* at 479-80.

Here, Plaintiff's complaint is devoid of any allegations regarding a contractual relationship between herself and the County.   Instead, Plaintiff has merely alleged in conclusory fashion that the Defendant "terminated her contractual relationship" based on race. Compl. ¶ 84. This bare allegation leaves unaddressed the existence of a contractual relationship between the parties. *See generally Janda v. Madera Community Hospital,* 16 F. Supp. 2d 1181, 1186-87 (E.D. Cal. 1998) (on a motion to dismiss finding that an employment contract, supported by consideration, existed between the plaintiff physician and the defendant hospital).   The bare allegations of Plaintiff's complaint in this respect, fail to state a cognizable claim for relief under 42 U.S.C. § 1981 and that claim should, therefore, be dismissed as well with leave to amend.

---

[4]   42 U.S.C. § 1981 provides as follows:

(a)   Statement of equal rights-All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)   "Make and enforce contracts" defined-For purposes of this section, the term "make and enforce contract" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)   Protection against impairment-The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

1

**D.     Intentional Infliction of Emotional Distress**

2          The County moves to dismiss Plaintiff's thirteenth cause of action for intentional infliction

3   of emotional distress. Defendant contends the County of Merced is immune from common law

4   claims under California Government Code § 815.  Cal. Gov't Code § 815(a*);*   Under California

5   law, a public entity cannot be liable for common law torts unless specifically authorized by statute.

6   *Milosky v. Regents of the Univ. of Cal.*, 44 Cal. 4th 876, 900-01 (2008). However, a public entity

7   may be found vicariously liable for employees' tortious acts. Cal. Gov't Code § 815.2; *Davison v.*

8   *Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1232 (C.D. Cal. 1998).  The County further

9   argues that Plaintiff's claim fails because she does not allege extreme or outrageous conduct by

10  MDA.

11         Plaintiff alleges that the County caused Plaintiff "extreme emotion distress in that it was

12  extreme and outrageous."  Pl's Compl. ¶ 86.  Plaintiff's complaint alleges that she was asked to

13  work on too many cases by MDA and that she was not properly compensated for her work. She

14  consistently informed MDA that her caseload was too large, but MDA responded that "the

15  economy was not good, and that the County's budget" could not accommodate her request for

16  increased compensation.  Compl. ¶ 11.  Due to her overwhelming caseload, Plaintiff began to feel

17  "extremely anxious, stressed, and humiliated" due her inability to change the situation.  Compl. ¶

18  34.

19         Under California law, the elements of the tort of intentional infliction of emotional distress

20  ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intent of causing, or

21  reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

22  severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

23  distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 54 Cal. 3d 868 (Cal.

24  1991).

25         As a matter of law, Plaintiff's allegations are not sufficiently outrageous conduct. The

26  actions complained of are within ordinary personnel management actions.  A claim for IIED arises

27  when there is "outrageous conduct by the defendant" proximately causing emotional distress.

28  *Agarwal v. Johnson*, 25 Cal.3d 932, 946 (1979). The conduct in question must be "more than mere

21

insult, indignities, threats, annoyances, petty oppressions, or other trivialities." *Iverson v. Atlas Pacific Engineering*, 143 Cal.App.3d 219, 231 (1st Dist. 1983). Of paramount importance to this action "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996). Thus, actions that are within the realm of ordinary personnel actions by an employer—such as hiring, firing, setting duties and priorities—are insufficient to support a claim of IIED even when those decisions are motivated by improper considerations such as retaliation or discrimination. *Id.*

The actions alleged against MDA, and vicariously against the County, are actions well within the realm of personnel management.  Those actions include assigning cases, determining the scope of Plaintiff's duties, and setting compensation for Plaintiff's position.  These actions are the sorts of actions normally within the realm of personnel management decision making and therefore will not support a claim for intentional infliction of emotional distress.  Plaintiff's thirteenth cause of action should be dismissed without leave to amend.

**E.    Wrongful Termination in Violation of Public Policy**

The fourteenth cause of action for relief alleges that Plaintiff was wrongfully terminated in violation of public policy.  Plaintiff's claim is a common law tort claim brought pursuant to *Tameny v. Atlantic Richfield Co*., 27 Cal. 3d 167, 164 (1980). Plaintiff's *Tameny* claim alleges that MDA "terminated [her] on the same day that she refused to accept a case that would violate her mandatory ethical obligations contained in the Rules of Professional Conduct." Compl. ¶ 89.  The County moves to dismiss Plaintiff's wrongful termination claim as barred against public entities. *Miklosy v. Regents of University of Cal*., 44 Cal. 4th 876, 899-900 (2008).   According to the County, an action for wrongful termination in violation of public policy cannot be alleged against a public entity pursuant to the immunities established by the California Government Claims Act.

The immunity of public entities, such as the County, to common law claims for wrongful discharge in violation of public policy is well established. *See Miklosy*, 44 Cal. 4th at 900 ("[S]ection 815 bars *Tameny* actions against public entities").  The California Supreme Court and multiple California courts, citing Government Code section 815, have consistently held that §815

1   shields public entities from so-called *Tameny* claims,[5] like the one Plaintiff asserts here. *See*

2   *Littleton v. Pac. Gas & Elec. Co*., 2013 U.S. Dist. LEXIS 177010 (E.D. Cal. Dec. 16, 2013); *Ross*

3   *v. San Francisco Bay Area Rapid Transit Dist*., 146 Cal. App. 4th 1507, 1514 (2007). Accordingly,

4   Defendant's motion to dismiss Plaintiff's Fourteenth Cause of Action should therefore be

5   GRANTED without leave to amend.

6   **F.     Breach of Implied Covenant of Good Faith and Fair Dealing**

7          Plaintiff's final cause of action is for breach of the implied covenant of good faith and fair

8   dealing. As a threshold matter, this claim must be predicated upon the existence of an underlying

9   contract. "An allegation of breach of the implied covenant of good faith and fair dealing is an

10  allegation of breach of an 'ex contractu' obligation, namely one arising out of the contract itself.

11  The covenant of good faith is read into contracts in order to protect the express covenants or

12  promises of the contract, not to protect some general public policy interest not directly tied to the

13  contract's purpose." *Foley v. Interactive Data Corporation*, 47 Cal.3d 654, 690 (1988).   Here,

14  Plaintiff must assert in her complaint the existence of an underlying contract in order for this cause

15  of action to stand. "Since the good faith covenant is an implied term of a contract, the existence of a

16  contractual relationship is thus a prerequisite for any action for breach of the covenant."  *Kim v.*

17  *Regents of the University of California,* 80 Cal.App.4th 160, 164 (2000) (*citing Smith v. City and*

18  *County of San Francisco* 225 Cal.App.3d 38, 49 (1990).

19         Plaintiff's claim against the County must fail because Plaintiff does not allege she entered

20  into a contract with the County.   As shown above, the allegations are insufficient to establish a

21  direct contractual relationship with the County. The County is therefore not a party to an

22  employment contract with Plaintiff and could not have breached the implied covenant of good faith.

23  *See Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49 (1990).   Accordingly, this

24  claims is dismissed without leave to amend.

25  **G.     Plaintiff's Claim or Prayer for Punitive Damages Should Be Dismissed**

26         Finally, the County moves to dismiss Plaintiff's request for relief in the form of punitive

27  ───────────────

28  [5]      In *Tameny v. Atlantic Richfield Co*., 27 Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980), the California
Supreme Court held that an employee who was allegedly fired because he refused to participate in an illegal scheme to fix
the price of gasoline could maintain a tort action for wrongful discharge against his employer.

damages on the grounds that: (1) punitive damages are not available in connection with Section 1983 claims asserted against public entities; and (2) California Government Code § 818 bars awards of punitive damages against public entities. (Doc. 14 at 24).

The County correctly argues that a plaintiff may not recover punitive damages from a municipality on a claim brought pursuant to 42 U.S.C. § 1983. The Supreme Court has squarely held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Jefferson v. City of Tarrant, Ala.*, 522 U.S. 75, 79 (1997); *accord Bell v. Clackamas County*, 341 F.3d 858, 868 n.4 (9th Cir. 2003). The County also correctly contends that, as a general matter, the California Government Code bars punitive damages awards against public entities. *See* Cal. Gov't Code § 818; *see also Westlands Water Dist. v. Amoco Chem. Co*., 953 F.2d 1109, 1113 (9th Cir. 1991) ("California Government Code § 818 bars any award of punitive damages against a public entity.").   Further, Title VII specifically exempts public entities from punitive damages.  42 U.S.C. § 1981a(b)(1). Accordingly, the Court recommends that the County's motion to dismiss Plaintiff's request for punitive damages be granted without leave to amend.

**H.     Defendant's Motion for Rule 11 Sanctions and Plaintiff's Motion to Strike**

In a separate motion, Defendant moves for sanctions against Plaintiff seeking reasonable attorneys' fees and expenses incurred in defending against Plaintiff's complaint. The County contends that Plaintiff should be sanctioned for filing a frivolous complaint and for improperly attempting to leverage a settlement with MDA.  (Doc. 26).  In response, Plaintiff argues sanctions are not substantively warranted, and asks the Court strike the declarations underlying Defendant's motion for sanctions as improper. (Doc. 36).

Under Federal Rule of Civil Procedure 11, a court may impose sanctions against a party or attorney when a complaint is filed for an improper purpose such as harassment or delay, includes claims that are unwarranted under existing law or a nonfrivolous argument for extension of the law, or contains factual allegations lacking in evidentiary support. Fed. R. Civ. P. 11(b), (c). When evaluating whether a complaint is frivolous or without evidentiary support, the court "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an

objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation marks and citation omitted).   A court may also impose sanctions where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991).

Defendant argues that as an attorney, Plaintiff had facts that would lead a reasonable attorney to determine that her claims against the County were frivolous.   Defendant contends that Plaintiff was aware that she had no relationship with the County.   Further, Defendant argues that Plaintiff was a signatory to the Independent Contractor Agreement with MDA and was familiar with both that contract and MDA's contract with the County.  (Doc. 27 at 7).

Given the factually sensitive law addressing whether a Plaintiff is an employee or an independent contractor discussed above, the Court cannot find that Plaintiff violated Rule 11.  An action is "clearly frivolous" when the argument is wholly without merit, or when the result is obvious. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2000). As addressed at length above, Plaintiff cited to applicable Supreme Court and Ninth Circuit authority supporting her complaint and her arguments were well taken and thoughtfully considered by the Court.

Although Defendant suggests that the lack of an employment agreement would lead a similarly situated person to conclude that she lacked an employment relationship with the County, the existence of an employment agreement does not carry the day.  An Independent Contractor Agreement in and of itself does not suggest that Plaintiff would be unable to state a claim plausible on its face particularly because a court must consider the facts of the working relationship, beyond the agreement, in determining whether a person is an employee or an independent contractor. Further, there is no indication that Plaintiff acted in bad faith or unreasonably.   Even if unsuccessful, Plaintiff is entitled to pursue judicial resolution of her claims to the extent the law allows.  As a result, the Court concludes that Plaintiff's claims, though dismissed, were not brought for any improper purpose. Plaintiff's complaint so obviously frivolous or lacking in factual support that sanctions are appropriate. Accordingly, Defendant's Motion for Sanctions is DENIED and Plaintiff's related Motion to Strike is DENIED as MOOT. (Docs. 27, 36).

### I.   Leave to Amend

Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  This "policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Here, as the allegations are such that amendment may permit Plaintiff to state sufficient plausible claims, the Court grants leave to amend.

**CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS as follows:

1.     GRANTS Defendant's Motion to Dismiss Plaintiff's negligent supervision of a statutory duty under California Penal Code § 987.2(a) without leave to amend;

2.     GRANTS Defendant's Motion to Dismiss Plaintiff's failure to discharge a statutory duty under California Penal Code §987.2 without leave to amend;

3.     GRANTS Defendant's Motion to Dismiss Plaintiff's vicarious liability for MDA's negligence and intentional torts under Government Codes § 815.2(a) and 815 without leave to amend;

4.   GRANTS Defendant's Motion to Dismiss Plaintiff's race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq* with leave to amend;

5.     GRANTS Defendant's Motion to Dismiss Plaintiff's race and sex discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940, *et seq* with leave to amend;

6.     GRANTS Defendant's Motion to Dismiss Plaintiff's failure to prevent discrimination in violation of FEHA with leave to amend;

7.     GRANTS Defendant's Motion to Dismiss Plaintiff's retaliation in violation of Title VII with leave to amend;

8.     GRANTS Defendant's Motion to Dismiss Plaintiff's retaliation in violation of FEHA with leave to amend;

9.      GRANTS Defendant's Motion to Dismiss Plaintiff's violation of the Equal Pay Act of 1963  ("EPA"), 29 U.S.C. § 206, *et seq*. with leave to amend;

10.     GRANTS Defendant's Motion to Dismiss Plaintiff's violation of California Equal Pay Act, Cal. Labor Code § 1197.5 ("CEPA") with leave to amend;

11.     GRANTS Defendant's Motion to Dismiss Plaintiff's racial discrimination in violation of 42 U.S.C. § 1983 with leave to amend;

12.     GRANTS Defendant's Motion to Dismiss Plaintiff's violation of the Civil Rights Act of 1866 (42 U.S.C. §1981, *et seq*.) with leave to amend;

13.     GRANTS Defendant's Motion to Dismiss Plaintiff's intentional infliction of emotional distress without leave to amend;

14.     GRANTS Defendant's Motion to Dismiss Plaintiff's wrongful termination in violation of public policy without leave to amend; and

15.     GRANTS Defendant's Motion to Dismiss Plaintiff's breach of the implied covenant of good faith and fair dealing without leave to amend.

Defendant's Motion for Sanctions is DENIED and Plaintiff's related Motion to Strike is DENIED as MOOT.

The amended complaint shall be filed within thirty (30) days from the date of adoption of the findings and recommendations.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge

///

///

///

///

///

27

will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 6, 2014**                    /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE