**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANGELA D. MAYFIELD,** | 1:13-cv-01619 LJO BAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANT COUNTY OF MERCED'S MOTION TO DISMISS (Doc. 54)** |
| v. | |
| **COUNTY OF MERCED,** *et al.*, | |
| Defendants. | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. **INTRODUCTION**

Plaintiff Angela D. Mayfield began working as a contracted criminal defense attorney at the Law Office of Morse & Pfeiff, dba Merced Defense Associates ("MDA") in 2005. First Amended Complaint ("FAC"), Doc. 67, ¶¶ 8, 10. Ms. Mayfield's position was to provide services to indigent criminal defendants under MDA's contract with the County of Merced ("the County"). *Id.* at ¶ 8. MDA terminated its contract with Ms. Mayfield on October 11, 2012. *Id.* at ¶¶ 10, 14. Plaintiff filed a *pro se* suit against MDA, her supervisors at MDA, Cindy Morse, and Thomas Pfeiff (collectively "Lawyer Defendants") and the County, alleging claims of race and sex discrimination and retaliation, under various state and federal civil rights statutes. Now before the Court is the County's Motion to Dismiss the FAC under Rule 12(b)(6).[1] The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g).

## III. **PROCEDURAL HISTORY**

Plaintiff initiated this action on October 8, 2013. Doc. 1. In her original complaint, Plaintiff asserted fifteen causes of action against the County, Lawyer Defendants, and MDA. *Id.* Five of these claims, which arose under the California Government Tort Claims Act and common law tort theories, were dismissed with prejudice, in accordance with findings and recommendation issued by Magistrate Judge Barbara A. McAuliffe. Doc. No. 50. The other nine claims, which alleged violations under federal civil rights acts and California's Fair Employment and Housing Act ("FEHA"), Equal Pay Act ("EPA"), and California Labor Code § 1197.5, were dismissed with leave to amend as to the County. *Id.* Plaintiff filed her FAC on August 8, 2014[2] alleging the following seven causes of action against the County: (1) race and sex discrimination under Title VII of the federal 1964 Civil Rights Act ("Title VII"), (2) race and sex discrimination under FEHA, (3) failure to prevent discrimination under FEHA, (4) retaliation under Title VII and FEHA, (5) retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

---

[1] Lawyer Defendants and MDA filed a separate motion to dismiss, Doc. No. 55, which is addressed in a separate order.
[2] The FAC was refiled on October 24, 2014 to correct a filing error, pursuant to the Court's Minute Order, Doc. 66.

206, and Cal. Lab. Code ("CLC") § 1197.5, (6) violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983, and (7) race discrimination and retaliation under 42 U.S.C. § 1981. Plaintiff's Eighth and Ninth Causes of Action, for wrongful discharge and failure to reimburse, are alleged against MDA only. The County moves to dismiss the remaining claims against it, all of which were previously dismissed with leave to amend, on the basis that Plaintiff has failed to allege additional facts to support cognizable claims against the County. Memorandum of Points and Authorities in Support of Defendant County of Merced's Motion to Dismiss ("County Mem."), Doc. No. 54-1, at 3.

## IV. FACTUAL BACKGROUND

Plaintiff began work for MDA in February of 2005. FAC ¶ 10. Plaintiff alleges that she became dissatisfied with her caseload and the compensation she received from MDA and made multiple complaints to MDA regarding those issues. *Id.* at ¶¶ 21, 26. During her tenure with MDA, Plaintiff discovered that her Caucasian male coworkers received higher overall compensation and higher starting pay than she was offered. *Id.* at ¶ 22. Plaintiff also alleges that on September 7, 2012, while she and Mr. Pfeiff were both in court, Plaintiff told a judge that she could not accept an additional case because her caseload was too large and that she was addressing the issues with MDA. *Id.* at ¶ 33.

On September 10, 2012, MDA notified Plaintiff that it was terminating her contract "without cause." *Id.* at ¶ 34. After receiving notice of the termination, Plaintiff met with County executive officer Angelo Lamas to discuss her termination. *Id.* at ¶ 35. During their discussion, Mr. Lamas advised Plaintiff regarding the rate the County paid for indigent defense attorneys. *Id.* After meeting with Mr. Lamas, Plaintiff alleges that she realized that the County provided enough funding to pay her more and to provide additional attorneys. *Id.* at ¶ 36.

Plaintiff filed a charge of discrimination under the FEHA and received a right-to-sue letter on April 30, 2013. *Id.* at ¶ 3. She filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on September 4, 2013. *Id*. Plaintiff alleges that

Defendant discriminated against her through its agent MDA based on her race and sex by failing to assign her a caseload comparable to that of her white colleagues. *Id.* at ¶ 41. Further, Plaintiff alleges that she performed the same job duties as her white male coworkers, yet she was paid a lower wage for such work based on her race and sex. *Id.* at ¶ 42.

## V. **STANDARD OF DECISION**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D.R.I. 1996). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

---

[3] Plaintiff's reliance on *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), for the premise that a complaint must only include "a short and plain statement of the claim showing that the pleader is entitled to relief" is outdated. The current pleading standard was altered by the Supreme Court's decision in *Twombly,* as discussed above. *See* 550 U.S. at 584 (Stevens, J., dissenting.).

4

short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## VI. ANALYSIS

### A. Whether Plaintiff Has Asserted Viable Claims Under Title VII, the FLSA or the FEHA

Five of the seven claims Plaintiff brings against the County are premised upon the allegation that Plaintiff was an "employee" of the County of Merced. Claims one through four are all brought under Title VII, or FEHA, both of "which predicate potential . . . liability on the status of the defendant as an 'employer.'" *Kelly v. Methodist Hosp. of S. Cal.*, 22 Cal. 4th 1108, 1116 (2000) (*quoting* Cal. Gov't Code § 12926); 42 U.S.C.A. § 2000e(b).[4] Claim five, violation of the EPA also may only be brought against an employer. *Northwest Airlines v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 92 (1981) (the EPA is "expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees." Likewise, as to her sixth cause of action, the FLSA and CLC claims only apply to employees. See 29 U.S.C. § 206(d)(1) (prohibiting sex discrimination in the payment of wages "to employees"); Cal. Lab. Code §1197.5 (providing cause of action for unfair wages against employers). Thus, to prevail on her employment discrimination and retaliation claims under Title VII, FEHA, the FLSA, and the CLC, Ms. Mayfield must plausibly allege that she was an "employee" of the County of Merced.

Judge McAuliffe provided a thorough analysis of this issue in her Findings and

---

[4] The Court notes that claims under FEHA are often analogous to claims under Title VII and generally are analyzed similarly. *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 922-23 (9th Cir. 2000*); see also Clark v. Claremont University Center*, 6 Cal. App. 4th 639, 662 (1992) ("Although [FEHA and Title VII] differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of [FEHA].") (internal quotation marks and citation omitted).

Recommendations ("F&Rs") as to the County's Motion to Dismiss Plaintiff's initial complaint, Doc. No. 43 at 12-16. This Court agreed with the F&Rs' conclusion that the initial complaint failed to allege sufficient facts to indicate that Plaintiff had an actual, implied, or joint-employment relationship with the County, based on the contracts that existed between MDA and the County and between MDA and Plaintiff. Doc. 50. Plaintiff attempts to remedy these deficiencies by highlighting additional provisions in the contract between the County and MDA (the "Services Contract"). FAC ¶ 13. These provisions require MDA to, for example, provide office and bilingual services to its contract attorneys, ensure that attorneys working under the contract maintain separate offices from one another, and comply with labor laws and fair employment practices. *Id.*

### 1. **Direct Employment**

The Supreme Court created a list of factors federal courts use in determining whether a plaintiff is an employee (as oppose to an independent contractor) under Title VII in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992). Under *Darden,* the primary inquiry to determine whether a plaintiff is an employee is "the [defendant's] right to control the manner and means by which the [plaintiff's work] is accomplished." *Id.* Some factors relevant to this inquiry are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24.

Likewise, under California law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the "manner and means" of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). In addition, "California courts consider a number of additional factors, including: the right of the principal to discharge at will, without cause . . . whether the work is usually done under the

6

direction of the principal . . . and whether the parties believe they are creating an employer-employee relationship." *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 581 (N.D. Cal. 2011). For example, in *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979), the Ninth Circuit found a plausible employment relationship between a berry farm and sublicensed strawberry growers. Critical factors identified by the *Driscoll* Court were allegations that the berry farm could fire a grower, provided significant guidance and oversight over their operations (including determining the quantity and variety of plants grown by each grower), and might ultimately determine how much they were paid. *Id.*

As discussed in the F&R's, Plaintiff's original complaint failed to allege sufficient facts to show a possible employer-employee relationship necessary under Title VII, FEHA, or California law. F&R's at 15. The additional contract provisions identified by Plaintiff do not go any further in establishing that the County had any direct control over Plaintiff. While they mandate certain standards that must be met by attorneys working under the contract, the Contract is clear that MDA is solely responsible for the work produced on MDA's behalf. Ex. E. § 2(G). ("ATTORNEY [MDA] agrees that it is solely responsible to COUNTY for the performance of any Contract Attorney or subcontractor whether approved by County or not."). Further, MDA is solely responsible for developing written policies to govern contract attorneys, *id.* at § 2(J), for ensuring that contracting attorneys are qualified, *id.* at § 2(M); § 5; and, ultimately for providing "high quality" legal representation to indigent defendants, *id.* at § 5. Unlike the Plaintiffs in *Driscoll,* Plaintiff does not allege that the County had the ability to hire or fire her, determine her caseload or decide how much she was paid, or provided any day to day guidance or control over her work. While the County provided a bulk amount of work and money to MDA, Plaintiff does not allege that the County had any authority to decide how the work or the money was to be allocated among the attorneys working for MDA. Thus, Plaintiff does not plausibly allege that the County directly employed her under either federal or California law.

## 2. **Indirect Liability**

The Ninth Circuit also recognizes that an employer may be indirectly liable under Title VII as well. *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 930 (9th Cir. 2003). This occurs "where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer." *Id.* (quoting *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980)). Liability in these cases, however, is limited to instances "where the indirect employer was the entity performing the discriminatory act." *Id.* at 931. For example, the Ninth Circuit found that California's requirement, formulation, and administration of a licensing examination for public school teachers constituted an "interference" with the teachers' right to work. *Ass'n of Mexican-Am. Educators v. State of California ("AMAE")*, 231 F.3d 572, 582 (9th Cir. 2000) (en banc). Plaintiffs in *AMAE* claimed that the licensing examination had a discriminatory impact that subjected the state to liability under Title VII. *Id.* The circumstances of this case are unlike those in *AMAE*. While Plaintiff alleges that the County dictated some general workplace parameters, these conditions are not the basis for her Title VII action. In other words, she does not claim that the standards agreed to in the Services Contract (i.e. that attorneys maintain separate offices or comply with ethical guidelines) interfered with her ability to work for MDA. Thus, there is no basis for Plaintiff's claim that the County is indirectly liable under Title VII.

## 3. **Joint Employment/Integrated Enterprise**

The County may also be liable if it and MDA are an "integrated enterprise." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002). In the Ninth Circuit, courts apply the following factors in this determination: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Id.* Plaintiff does not allege any facts that would suggest that MDA and the County's operations are interrelated, have common management, centralized labor relations or are commonly owned or financially controlled. Thus, she does not plausibly allege that MDA and the County are an "integrated enterprise."

## 4. **Whether MDA Acted as the County's Agent**

Plaintiff also argues that even if no direct or indirect employment relationship can be established between her and the County, the County should still be liable because MDA acted as the County's agent. FAC ¶¶ 13-14; Opposition at 16-17. The County argues that Plaintiff did not allege any facts that would support a finding that an agency relationship existed. County Mem. at 9-11.

In evaluating whether an "agency relationship" exists for Title VII purposes, the Ninth Circuit has looked to whether any "traditional indicia of an agency relationship" are present. *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983). These factors include "consent by the alleged agent that another shall act on his behalf, and control of the alleged agent by the principal." *Id.* (internal quotations omitted). Additionally, the Ninth Circuit has considered whether an entity "affirmatively, actively" participated in the discriminatory of its alleged agent. *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1214 (9th Cir. 1989) ("To establish employer responsibility for the discriminatory programs of third parties, the employer must be more than a broker, or other intermediary, that simply enables its employees to enter into arrangements with third parties; the employer must affirmatively, actively participate in the third-party program.").

Under California law, "[a]n agent is one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. Principals are liable for the tortious acts of their agents committed within the scope of the agency. *Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005). To establish an agency relationship, a plaintiff must allege:

> (1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself;
> (2) an agent is a fiduciary with respect to matters within the scope of the agency; and
> (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him.

*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.*, 148 Cal. App. 4th 937, 964 (2007), as modified on denial of reh'g (Apr. 17, 2007) (internal citations omitted). "An agency is either actual or ostensible." Cal. Civ. Code § 2298. An "ostensible agency" relationship is formed when the

principal "intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. *Garlock*, 148 Cal. App. 4th at 965.

Plaintiff has not alleged that the County gave authority to MDA or the Lawyer Defendants to enter into an employment contract with Plaintiff or any other contracted attorney *on its behalf*. The Services Contract reflects that MDA is responsible for providing legal services to the County, and that these services must meet certain standards. Ex. E. § 2(A) ("All attorneys providing services under this Agreement, including Contract Attorneys, shall at all times each be an Attorney at Law admitted to practice in the State of California."). However, the Contract is clear that MDA is *solely* responsible for the work produced on MDA's behalf, *id.* at § 2(G) ("ATTORNEY [MDA] agrees that it is solely responsible to COUNTY for the performance of any Contract Attorney or subcontractor whether approved by County or not.") and that the Services Contract is not intended to expose the County to obligations to third parties, *id.* at § 22 ("COUNTY shall not be obligated or liable to any party other than [MDA]."). Further, MDA is solely responsible for developing written policies to govern contract attorneys, *id.* at § 2(J), for ensuring that contracting attorneys are qualified, *id.* at §§ 2(M) & 5; and, ultimately for providing "high quality" legal representation to indigent defendants, *id.* at § 5. Moreover, the Contract makes clear that MDA is "solely responsible" for complying with employment laws and taxes with regards to MDA's employees or subcontractors as "no employer-employee relationship is created" between County and MDA. *Id.* at § 13. There is simply no basis under federal or California case law for reading the Contract as giving MDA the authority to engage in relationships with third parties, such as Plaintiff, on the County's behalf.

Nor does the Plaintiff allege that the County *actually controlled* MDA's actions as its principal. Rather, Plaintiff alleges that Mr. Pfeiff allocated the docket assigned by the County, FAC ¶ 29, that MDA operated under a "flat fee payment system," FAC ¶ 30, and that MDA "chose to spend the money in a way that enriched themselves and they did so in a discriminatory manner." FAC ¶ 36. In her Opposition, Plaintiff claims that MDA had sole authority to hire, fire, set compensation, and determine

10

case assignments. Opposition at 13. She argues that these facts "establish" that the Lawyer Defendants "were not reviewed by others- they had the *sole* power and authority to make any and all decisions regarding the actions alleged in Plaintiff's FAC." *Id.* (emphasis added). Moreover, in the claim letter filed on her behalf, Plaintiff describes the County as "ignoring its obligations to monitor and/or supervise" the provisions of the Services Contract with MDA and that it its "total ignorance as to attorney hours spent on cases indicates that it had no concern about the adequacy of compensation to Ms. Mayfield." Exhibit I at 111. Claims that the County was "totally ignorant" of and "had no concern for" Plaintiff's caseload and rate of pay are wholly inconsistent with claims that the County controlled her working conditions or that the County "affirmatively, actively" participated in any alleged discriminatory conduct. *Morgan*, 884 F.2d at 1214.

Finally, Plaintiff does not claim that MDA caused her to believe that she had entered into an employment contract with the County. Thus, she does not plausibly allege that MDA ostensibly acted as the County's agent when MDA entered into its employment contract with her.

For the reasons discussed above, this Court GRANTS WITHOUT LEAVE TO AMEND the County's Motion to Dismiss Causes of Action One through Five as to the County. Plaintiff has been given ample guidance and opportunity to address these issues already; further opportunity to amend is not warranted.

**B.     Whether Plaintiff Has Asserted a Viable Claim Under 42 U.S.C. § 1983**

In her sixth cause of action, Plaintiff alleges that the County deprived Plaintiff of her civil rights when the Lawyer Defendants "adopted an official policy and custom as County's official policy making officials to treat African-American female attorneys working as contract public defenders for Merced County differently and less preferable than similarly situated Caucasian male attorneys . . ." FAC ¶ 53. The County first argues that this claim is duplicative of Plaintiff's Title VII claim and must be dismissed. County Mem. at 15. This argument has no merit. Defendants cite to *Roberts v. Coll. of the Desert*, 870 F.2d 1411, 1415 (9th Cir. 1988), for the premise that "[a] claim for deprivation of civil

rights is not available under Section 1983 if plaintiff claims a direct violation of statutory rights under Title VII." County Mem. at 15. This is the *opposite* of the Ninth Circuit's holding. The Ninth Circuit actually held that "Title VII does *not* preempt an action under section 1983 for a violation of the fourteenth amendment." 870 F.2d at 1415 (emphasis added). However, *Roberts* also holds that a Section 1983 claim cannot proceed parallel to a Title VII claim if the Section 1983 claim is premised *entirely* on a violation of Title VII itself. *Id.* (recognizing that Section 1983 lawsuits "cannot be invoked when the only right violated is the Title VII right to be free of discrimination in employment."). Since Plaintiff's claim is that Defendants' conduct amounted to a violation of her right to equal protection under the Fourteenth Amendment, FAC ¶¶ 53-54, it cannot be dismissed on this basis.

The County also argues that Plaintiff fails to state a viable Section 1983 claim because it does not assert that the County had a policy, custom or practice of discrimination or that the County could be liable for any allegedly discriminatory practices of MDA or the Lawyer Defendants. County Mem. at 15.

Municipalities and local governments can be liable for damages under Section 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, (1978). Local governments are not liable, however, for simply employing a tortfeasor. *Id.* at 694-95 ("Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

A government entity may be liable under Section 1983 claim if a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Details of these policies need to be alleged with enough specificity to raise them beyond a "formulaic recitation of a cause of action's elements." *Id.* They must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez*

*v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The Ninth Circuit has recognized four distinct ways[5] to demonstrate a municipal policy or custom:

> (1) "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . ."
> (2) where "the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure' of the local government entity . . ."
> (3) by showing that "the tortfeasor was an official whose acts fairly represent official policy such that the challenged act constituted an official policy . . ." or
> (4) by showing that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks and citations omitted). Liability under the first prong arises through the adoption of a formal policy, defined as "a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 (1986)). Plaintiff does not allege facts suggesting the County has adopted such a policy, thus she has not presented a claim under the first prong.

A plaintiff can claim liability under the second prong by alleging that a "longstanding practice or custom" has evolved, but this requires a showing of more than "isolated or sporadic incidents." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). Rather, "the custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully developed factual record. *Compare Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir.1989)

---

[5] Many cases combine the first two prongs. *See, e.g. Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Court follows the example laid out in *Price* for simplicity.

(single incident of excessive force inadequate to establish liability); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.1988) (two incidents insufficient) with *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005) (triable issue of fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area).

Here Plaintiff alleges that Defendants had a "longstanding pattern and practice of discriminating against African-American female attorneys." FAC ¶ 53. However, the only factual allegation put forth as to the County is its "failure to investigate and correct such discriminatory treatment and constitutional violations in the face of evidence that established numerous contract violations and discrimination on the part of their agent, MDA." *Id*. As to this, Plaintiff describes that she only contacted the County regarding her situation with MDA "after learning of her termination." FAC ¶ 35. She claims that inaction on the part of County Executive Angelo Lamas, FAC ¶ 35, and Chief Deputy County Counsel Michael Calabrese, FAC ¶ 37, amounted to a policy of "deliberate indifference." Yet, she does not explain how such indifference could plausibly be the "moving force" behind the allegedly discriminatory conditions that *already occurred*. Nor has she otherwise demonstrated that that the County's alleged indifference to her complaint was anything other than an isolated incident. Thus she has not alleged liability under the second prong of *Monell*.

Liability under the third prong relates to the Supreme Court's holding "that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level."). This liability only attaches "where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*" and a "deliberate choice to follow a course of action is made from

among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 481, 483 (emphasis added)."[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id*. at 481. Plaintiff does not allege that a County policymaker's isolated decision violated her constitutional rights; thus she does not present a claim under the third *Monell* prong.

The fourth prong reflects the fact that policymakers may delegate their authority to another official. Liability may arise "if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker ... [or] if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)). However, a policymaker must "approve a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Id.* (emphasis in original).

Plaintiff claims that the County is liable under this prong because the Lawyer Defendants "adopted an official policy and custom as County's official policy making officials to treat African-American female attorneys working as contract public defenders for Merced County differently and less preferable than similarly situated Caucasian male attorneys. . . ." FAC ¶ 53. However, she does not identify how this policy might be attributed to the County. Neither of the Lawyer Defendants are alleged to be subordinates of any supervising County policy maker. Rather, Plaintiff claims that the Lawyer Defendants themselves are the "official policy making officials." *Id.* However, no facts are asserted that would support such a conclusion. For example, Plaintiff does not claim that either of the Lawyer Defendants are elected or appointed county officials. As discussed in the F&Rs, "the fact that the private entities received state funding and were subject to state regulation d[oes] not, without more, convert thier [sic] conduct  into state action." *West v. Atkins*, 487 U.S. 42, 52 n.10 (1988). As discussed above,

Plaintiff's FAC highlights additional provisions in the contract between the County and MDA. FAC ¶ 13. Plaintiff does not, however, identify a contractual provision, or allege any other factual or legal basis for her claim that the County somehow delegated policy-making authority to MDA or the Lawyer Defendants.

Therefore, this Court GRANTS WITHOUT LEAVE TO AMEND the County's Motion to Dismiss Plaintiff's Sixth Cause of Action, as to the County. Plaintiff has had sufficient opportunity to allege facts that would support a viable *Monell* claim; further opportunity would be futile.

C.      **Whether Plaintiff Has a Viable Claim Under 42 U.S.C. § 1981**

Plaintiff's Seventh Cause of Action alleges that the County violated her contractual rights under 42 U.S.C. § 1981 because it is liable for her retaliatory termination. FAC at ¶ 55. The County argues that this claim should be dismissed against it because Plaintiff had no contractual relationship with the County. Opposition at 17. This claim was dismissed from Plaintiff's original Complaint on this basis. *See* Doc. No. 43 at 20.

Any claim brought under Section 1981 must initially identify an impaired "contractual relationship," under which the plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Plaintiff's FAC asserts rights associated with her employment contract with MDA. FAC at ¶ 55 ("Defendants retaliatory termination of Plaintiff's employment and discrimination in the making, performing and enjoyment of all benefits, terms and conditions of the contractual relationship based on race violated 42 U.S.C. § 1981."). As discussed above, neither the FAC nor Plaintiff's Opposition provide a credible basis for the theory that the County assumed any responsibilities under the employment contract.

Plaintiff's Opposition also asserts that Plaintiff has rights as a third-party beneficiary of Services Contract between the County and MDA. Opposition at 14 (asserting that Plaintiff had "rights under" the Services Contract because it "prohibited MDA from violating any and all fair employment and labor laws."). This is alleged in the "Introduction" to the FAC on page 2. ("Plaintiff asserts she has 'rights

under the contract' because performance under the contract required the services of several attorneys and the contract required MDA to obey and comply with all labor and employment laws.")

Federal courts have recognized situations in which third parties were intended beneficiaries under Section 1981. *See Macedonia Church v. Lancaster Hotel Limited P'ship*, 270 F.R.D. 107, 115 (D. Conn. 2010) (church members are third party beneficiaries of church attempt to book group lodging); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir.2006) (refusal to allow daughter to purchase hair color addition to gift package purchased for her mother); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1339 (2d Cir.1974) (payment of fee conferred third party beneficiary status on invited guests to swim club); *Jones v. Local 520, Inter. Union of Operating Engineers*, 603 F.2d 664, 665 (7th Cir. 1979) (preferential hiring plan); *see also* Restatement (Second) of Contracts § 302(1) (1981) (A beneficiary is "an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties.").

In determining whether a party is a third-party beneficiary to a contract for the purposes of a Section 1981 claim, courts look to the law of the forum state. *See Jackson v. California*, No. 1:13-CV-01055-LJO, 2014 WL 3778263, at *10 (E.D. Cal. July 30, 2014) report and recommendation adopted, No. 1:13-CV-01055-LJO-SAB, 2014 WL 4192802 (E.D. Cal. Aug. 20, 2014). Under California law, standing to sue as a third-party beneficiary to a government contract depends on the intent of the parties as manifested by the contract and the circumstances surrounding its formation. *Zigas v. Superior Court*, 120 Cal. App. 3d 827, 837 (1981). Where a party seeks damages, California courts look to whether the contract in question suggests an intention to confer that right to the third party. *Serv. Employees Inter. Union, Local 99 v. Options--A Child Care & Human Servs. Agency*, 200 Cal. App. 4th 869, 881 (2011). Where a contract "manifests no intent that the defendants pay damages to compensate plaintiffs or other members of the public for their nonperformance" plaintiffs do not have standing to bring claims as a matter of law. *Martinez v. Socoma Companies, Inc.*, 11 Cal. 3d 394, 402 (1974).

Here, the Service Contract's provisions for indemnification and independent contracting indicate

a governmental purpose to *exclude* the direct rights against the County claimed here. *See* Ex. E, §§ 12-13. Moreover, the plain language of the Contract is sufficient to show that to the extent that Plaintiff may benefit from the contract, such benefit was incidental to the rights and duties afforded to the parties. For example, the preamble to the contract describes that it is "in the interest of justice, efficiency and the benefit of indigent defendants that County contracts with private counsel to render the usual and customary legal services of a public defender when the Public Defender is unable to provide representation to indigent defendants because of a conflict of interest or other reasons." Similarly, Section 2(E) of the Contract provides that MDA "shall provide a sufficient number of attorneys, presently estimated to be eight (8) to ten (10)." While it might incidentally benefit Plaintiff for MDA to be well-staffed, clearly the intended beneficiaries of this obligation are MDA and the County in light of their stated "mutual objective to achieve a legal defense system that provides indigent defense services for up to six (6) levels of conflict in a case." *Id.* Thus, Plaintiff's claim that she was an intended beneficiary of MDA's agreement to comply with labor laws is contradicted by the plain language of the Services Contract.

Therefore, this Court GRANTS WITHOUT LEAVE TO AMEND the County's Motion to Dismiss Plaintiff's Seventh Cause of Action, as to the County. Plaintiff has had sufficient opportunity to allege facts that would support a viable Section 1981 claim; further leave to amend is not warranted.

## VII. CONCLUSION AND ORDER

For the reasons discussed, above the Court GRANTS WITHOUT LEAVE TO AMEND Defendant County of Merced's Motion to Dismiss the County FROM ALL CLAIMS IN THIS ACTION.

IT IS SO ORDERED.

Dated:   **November 10, 2014**         /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE